[S. F. No. 5148. In Bank.—February 2, 1911.]

# JACOB STEIN, Respondent, v. UNITED RAILROADS OF SAN FRANCISCO, Appellant.

NEGLIGENCE—COMPLAINT—GENERAL ALLEGATION OF NEGLIGENCE SUFFICIENT.—In an action to recover damages for personal injuries to one driving across the track of an electric street-railroad, as the result of the negligent operation of one of the defendant's cars, it is sufficient to charge the negligence in general terms, that is, to state what was done, and to allege that it was negligently done. without stating the particular omission which rendered the act negligent. But it must appear from the facts averred that the negligence caused or contributed to the injury.

ID.—DEMURRER—UNCERTAINTY—ERROR WITHOUT PREJUDICE.—Error in overruling a demurrer to a complaint for uncertainty is without prejudice, unless the defendant was misled by the defects in the pleading and the case was not fairly tried on the merits.

ID.—MUNICIPAL ORDINANCE—STREET CROSSING.—In a municipal ordinance rendering it unlawful for any person "to drive any horse or horses at a rate of speed faster than a walk over or upon any street crossing," the word "crossing" includes not merely that part of the street used ordinarily by pedestrians in moving from one side of the street to the other, but refers to the entire area covered by the two streets at their place of intersection.

ID.—FAST DRIVING OVER STREET CROSSING—VIOLATION OF ORDINANCE—NEGLIGENCE PER SE—INSTRUCTIONS.—One injured by a collision with an electric street-car while violating such ordinance is guilty of negligence *per se* if such violation contributes proximately to the accident, and in an action by him to recover for the injury, the refusal to give an instruction embodying such rule is erroneous, and is not justified on the ground that it ignored the doctrine of the "last clear chance," if the other instructions fully informed the jury with respect to that doctrine.

ID.—WITNESS FALSE IN PART OF TESTIMONY.—Although the court may properly instruct the jury, when occasion requires, that "if a witness before you has willfully sworn falsely to any material matter, it is your duty to distrust his testimony," still the refusal to give such instruction is without error, if there was no suggestion by either side of willful perjury, and the jury were otherwise fully instructed on the method of determining the credibility of the witnesses.

ID.—ABSENCE OF FAULT OF DEFENDANT.—In such action, it was not error to refuse to give an instruction on the self-evident proposition that

if the accident occurred without the fault of either party the defendant would not be liable.

ID.—MEASURE OF DAMAGES—PERMANENT INJURY—POSSIBLE FUTURE SUFFERING—DAMAGES LIMITED TO INJURY SUSTAINED.—In such action, a part of an instruction to the jury that "in estimating the amount of damages they might consider whether the injury was temporary in its nature, or was likely to be permanent in its character," will not be construed as violative of the rule of damages declared by section 3283 of the Civil Code, or as implying that damages may be awarded for merely possible future suffering, if in the same instruction the jury are expressly told that their award of damages must be limited to the injury sustained.

ID.—SMALLNESS OF VERDICT—PRESUMPTION AS TO DAMAGES.—The appellate court cannot presume, that any element of damage referred to in an instruction was ignored by the jury merely because the verdict was not for a large sum of money.

ID.—LAST CLEAR CHANCE—COLLISION WITH ELECTRIC CAR—EFFORT TO STOP CAR—SPECIAL FINDING—EVIDENCE.—In this action to recover damages for injuries resulting from a collision with an electric street-car, it is held, upon a review of the evidence, that notwithstanding the plaintiffs contributory negligence, there was sufficient evidence upon the theory of the "last clear chance" to support the general verdict for the plaintiff; but that the defendant's liability under that theory depended entirely upon the question whether its motorman made every effort to stop his car as soon as he had knowledge of the danger, and that the defendant, for the purpose of testing the general verdict, had a right to have a special finding on such question.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. George A. Sturtevant, Judge.

The facts are stated in the opinion of the court.

A. A. Moore, Stanley Moore, and W. M. Cannon, for Appellant.

Wal. J. Tuska, for Respondent.

MELVIN, J.—Plaintiff's wagon was struck by one of the electric cars of the defendant corporation while he was driving across the track on Turk Street at the crossing of Buchanan Street in the city of San Francisco. Judgment was rendered in favor of plaintiff. Defendant appeals therefrom and from an order denying its motion for a new trial.

The allegations of the complaint material to this discussion are that the defendant "operated, ran and conducted one of its cars upon and along said Turk Street aforesaid in such a careless, negligent, reckless, wrongful and unlawful manner that the said car, when it came to the crossing by the street known as Buchanan Street and the said Turk Street, while going in an easterly direction, ran into and upon the plaintiff and severely injured the plaintiff in and upon his head and in and about his body." Then follow averments describing in detail the extent of the injuries and setting forth the amount claimed as damages.

There was a special demurrer to the complaint on the ground of uncertainty in that, according to appellant's contention, it could not be determined therefrom what act the defendant did or omitted to do which constituted negligence. This not being an action in which negligence is presumed from the occurrence of the accident and the burden of exculpation is upon the defendant, as in those cases wherein the relation of carrier and passenger existed between the parties, appellant earnestly urges that the complaint should have specified the acts and omissions constituting the alleged negligence. Many cases are cited showing that the rule for which appellant contends exists in some other states. In California, however, it is different. It was expressed in *Smith* v. *Buttner,* 90 Cal. 99, [27 Pac. 29], as follows: "It is well settled that negligence may be charged in general terms; that is, what was done being stated, it is sufficient to say it was negligently done, without stating the particular omission which rendered the act negligent. But it must appear from the facts averred that the negligence caused or contributed to the injury." It may be said further that even if it were error (and it was not), to overrule the demurrer for uncertainty, it was error without prejudice unless the demurring party was misled by the defects in the pleading and the case was not fairly tried on the merits. Here it appears that the issues were all fully, fairly, and understandingly tried. (*Bank of Lemoore* v. *Fulgham,* 151 Cal. 234, [90 Pac. 936]; *Irrgang v. Ott,* 9 Cal. App. 440, [99 Pac. 528].)

In an amendment to the answer defendant pleaded plaintiff's contributory negligence in violating a certain ordinance of the city and county of San Francisco numbered 803. At the trial the ordinance was introduced without objection. This

by-law provided that it should be unlawful for any person "to drive any horse or horses at a rate of speed faster than a walk over or upon any street crossing." Defendant offered, and the court refused, a number of instructions with reference to this ordinance. For purposes of illustration, it will be sufficient to quote two of these instructions, as all were of similar purport.

"If you find from the evidence in this case that plaintiff Jacob Stein drove over the street crossing at Turk and Buchanan streets at a faster gait than a walk, I instruct you as a matter of law that he was guilty of negligence.

"I instruct you that the failure of any person to perform a duty imposed upon him by an ordinance or other legal authority of itself constitutes negligence."

The refusal of the court to give this instruction is assigned as error by appellant, who cites in support of this contention *Sicmers* v. *Eisen,* 54 Cal. 418; *Higgins* v. *Deeney,* 78 Cal. 578, [21 Pac. 428]; *Driscoll* v. *Market St. etc. Ry. Co.,* 97 Cal. 553, [33 Am. St. Rep. 203, 32 Pac. 591]; *Denison etc. Ry. Co.* v. *Carter,* 98 Tex. 196, [107 Am. St. Rep. 626, 82 S. W. 783]; *Harrington* v. *Los Angeles Ry. Co.,* 140 Cal. 514, [98 Am. St. Rep. 85, 63 L. R. A. 238, 74 Pac. 15]. Evidently the word "crossing" as used in the ordinance includes, not merely that part of the street used ordinarily by pedestrians in moving from one side of the street to the other, but refers to the entire area covered by the two streets at their place of intersection. In *City St. Imp. Co.* v. *Laird,* 138 Cal. 29, [70 Pac. 917], it was held that "a crossing is the intersection of two streets and from the nature of the term can have no property fronting upon it." The title and the contents of the ordinance both indicate that this was the meaning of the word "crossing" in the minds of the legislators who enacted the by-law. The ordinance is entitled "Ordinance No. 803 (approved June 11, 1903), Prohibiting Fast Driving on Public Highways," and the same section which contains the inhibition to drive faster than a walk over or upon a crossing makes it unlawful and in violation of the ordinance to drive immoderately on a public highway. That the respondent was driving faster than a walk is undisputed. He himself said: "My horse was proceeding at a slow trot as it crossed the crossing at Turk and Buchanan streets, and when the accident occurred." James B. Molloy,

who was a passenger on the appellant's car, testified that "the horse was proceeding at a slow trot, a little over a walk"; while Fletcher, the conductor, declared: "The horse and wagon were going along at about eight or nine miles an hour. The horse was trotting along at a little above a medium trot; he was going at a pretty good trot." These were the only witnesses who testified regarding the speed of the horse, and in any view of the testimony of any or of all of them, the instruction above quoted, and the others upon the same subject, should have been given. It is the settled rule in this state under the doctrine of Californian cases above cited that the violator of a local ordinance is guilty of negligence *per se* if such violation contributes proximately to the accident. It is no sufficient answer to appellant's objection to the court's refusal to give the requested instructions that they ignored the doctrine of the "last clear chance." To announce such a rule would be to hold that each instruction must express all the law on the subject considered. The jurors were elsewhere in the charge of the court fully informed regarding the doctrine of "last clear chance" as follows:—

"I instruct you that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring another, must do so, notwithstanding the latter has placed himself in such situation of danger by his own negligence. If, therefore, you should find from the evidence that the motorman of defendant's car which collided with the plaintiff, saw or had the means of seeing the situation in which plaintiff was before the collision, and had the opportunity, by the exercise of proper care, to avoid the collision and avoid injuring the plaintiff, and failed to exercise such care or to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable, and your verdict must be for the plaintiff." The ordinance in question was pleaded and was introduced in evidence. To refuse the requested instructions with reference to it was clearly erroneous and so prejudicial to appellant that a new trial must be ordered.

Appellant's next assignment of error relates to the court's refusal to give the following instruction approved in *People* v. *Stevens,* 141 Cal. 492, [75 Pac. 64]:

"If a witness before you has willfully sworn falsely to any

material matter, it is your duty to distrust his testimony."
Unquestionably this is a proper instruction when occasion requires the court to give one upon the subject of willful false
swearing.   In the present case we cannot say that the court
erred in determining that there was no occasion for giving the
instruction.   There was no suggestion by either side of willful
perjury, and the jurors were fully instructed on the method
of determining the credibility of a witness as follows:—

"In determining the credibility of a witness, you should
consider whether his testimony is in itself contradictory,
whether it has been contradicted by other credible witnesses,
whether his statements are reasonable or unreasonable, whether
they are consistent with other or with the facts established by
other evidence or admitted.   You may also consider the witness' manner of testifying upon examination, the bias or prejudice, if any, manifested by him, his interest or absence of interest in the suit, his recollection, whether good or bad, clear
or indistinct, concerning the facts to which he testifies, his
inclination or motives, together with his opportunity of knowing the facts whereof he speaks.   The direct evidence of one
witness who is entitled to full credit is sufficient proof of any
fact in a civil suit."

It was not error for the court to refuse an instruction that
if the accident occurred without the fault of either party appellant would not be liable.   A juror would know that such
was the rule without instruction and it would seem absurd to
burden the record with a formal statement of a truth so self-evident.   The jury was charged fairly and fully upon the
subject of contributory negligence, and although certain of
appellant's proposed instructions on this subject were refused,
their substance was properly submitted to the jury in the
charge given by the court of its own motion.

As a part of one of the instructions the jurors were told
that in estimating the amount of damage they might consider
whether the injury was temporary in its nature, or was likely
to be permanent in its character."   It is most earnestly submitted that the above language violates the rule of damages
declared by section 3283 of the Civil Code, which provides that
"damages may be awarded in a judicial proceeding for detriment resulting after the commencement thereof or certain to
result in the future."   We do not think the instruction as

given did violence to the rule announced in *Melone* v. *Sierra Ry. Co.*, 151 Cal. 116, [91 Pac. 522]. In that case the jury were told that an element of damage was "the pain and anxiety that he has suffered or may suffer by reason of his injuries," and that in estimating the damages to be awarded "you may take into consideration . . . the physical and mental suffering he may have sustained or may undergo in the future by reason of his injuries." In that case, the judgment was very properly reversed because an instruction that a recovery might be had for pain and suffering merely possible in the future was clearly opposed to the criterion announced by section 3283 of the Civil Code. But the sentence above quoted from an instruction given in this case neither stated nor implied that damages might be awarded for merely possible future suffering. The language is taken from the midst of an instruction wherein the jurors were informed that in estimating the amount of damage, if any, they might consider the pain suffered, if any, the nature, extent, and severity of the injuries sustained, if any, the extent, degree, and character of suffering, mental or physical, if any, its duration and severity, and medical expenses, cost of nursing, loss of time and value thereof, and loss, if any, of earning capacity. Then comes the sentence: "You may also consider whether the injury was temporary in its nature, or likely to be permanent in its character." This is immediately followed by the concluding sentence of the instruction: "And from all these elements you will resolve what sum will fairly compensate the plaintiff for the injury *sustained.*" The former sentence describes the mental process which the jury must follow in reaching a conclusion regarding the permanent or temporary character of the injury. True, if the sentence stood alone, it might be open to the objection urged against it, but its vice is nullified by the very next sentence which limits the jury's award to the injury "sustained"—not to a future, contingent injury. The first sentence of the instruction also limits the jury to a consideration of the pecuniary damage, if any, "proved *to have been sustained.*" The instruction was more favorable to appellant than a full statement of the law would have been, for the jurors were not told that they might grant any compensation for future suffering, certain or otherwise.

Respondent also contends that the smallness of the verdict

($500) precludes the idea that the jury considered anything
except the actual loss of time, the medical expenses, and cost
of nursing which he was forced to meet by reason of his in-
juries, and that therefore the element of suffering either future
or past, was not considered by the jury.    This argument,
though ingenious, is fallacious.    We cannot presume that any
element of damage was ignored by the jury merely because the
verdict was not for a large sum of money.    Such presumption
would carry us into the realm of most unsatisfactory specula-
tion.

Before considering the question of negligence involved in
this case, it will be necessary briefly to review the evidence.

The plaintiff testified: "I was proceeding along Buchanan
Street in a southerly direction at a slow trot.    I did not see
anything when I got to the crossing of Turk and Buchanan
streets; when within four or six feet from the northerly line
of Turk Street while I was driving on Buchanan Street I saw
several chuck holes, and I was driving so as to get out of the
way of these; when I got to the corner of Turk Street I looked
up Turk or Webster Street but saw no car.    I then drove over
the crossing toward the track; when I got on the track I saw a
car coming at great speed from one hundred to two hundred
feet away, west from where I then was while crossing the
track.    I am pretty positive the car was over one hundred or
two hundred feet to the west when I first saw it.    I was going
in a southerly direction.    I speeded up my horse—I saw the
car and I speeded up my horse to get out of the way.    The car
struck my wagon."    The witness then described his injuries
due to his being thrown from the wagon.    He also said:  "I
didn't observe any obstruction in the neighborhood of the acci-
dent.    There was no obstruction either way that I could see
The street was clear both ways as far as I could see.    My
wagon was a covered wagon, with glass windows on both sides.
The weather was good that night."    Witness further testified:
"When I encountered the second chuckhole, I looked up Turk
Street; I could see all the way up to Webster Street.    When
my body came into the line of Turk Street, there was nothing
to prevent me seeing clear up to Fillmore Street.    The front
feet of my horse were on the track when I first saw the head-
light of the car.    The car was then nearer two hundred feet
away than one hundred feet, may be it was three hundred feet,

I could not be positive. I was going at a slow trot. I then struck the horse with the lines and he went forward. I did not attempt to stop the horse, or to back him up. The car was going at a tremendous speed, at a very rapid rate. When I first saw the car coming my body was not upon the track, my wagon was near the track." James B. Molloy, who was seated on the front of the Turk Street car testified that it was running at a high rate of speed after leaving Fillmore Street. He said: "It took a part of a minute for the car to go from Fillmore to Webster Street, it did not take a minute. I should judge it did not take as long to go from Webster Street to Buchanan Street as it did to go from Fillmore to Webster. The current was on full force." He also testified that when about the middle of the block between Webster and Buchanan streets he observed the wagon in full view not quite on the track; that the car struck the wagon and the occupant was thrown out; and that the motorman "did not put the air brake on until within ten feet away from the wagon." The witness also stated that the horse's head was about four feet from the track when he first saw it and that about twenty seconds elapsed from the time he saw the wagon until the car struck it; that the way was unobstructed and that if he had been observing he could have seen the car as soon as it came out "from behind the property line," and that the car was almost upon the driver before he made any effort to get out of the way—that the front wheels had cleared both rails of the track before the driver attempted to increase the speed of the horse. Mr. Molloy said additionally: "The bumper of the car struck the rear wheel of the wagon. The driver attempted to turn his horse to the left, right when the car was upon him, and after the fore wheels had cleared the track. The motorman could have stopped the car to avoid a collision when the wagon was first seen by me. I did not think there would be a collision . . . because the least effort of the motorman would have prevented a collision." The conductor, Fletcher, in addition to the testimony about the speed of the horse previously referred to, said: "About when I neared Buchanan Street, about thirty feet away from the track we saw a covered wagon and a horse coming. About the minute I saw the horse and wagon, the motorman must have seen them, too, because that instant he turned off the power and put the air brakes

on as fully as he could, and the car immediately slackened, but the wagon and driver kept coming right along, about the same gait of speed, I should judge. The horse and wagon were going along at about eight or nine miles an hour. . . . He kept going right along. He did not slacken his speed at all, and kept driving right across the track. When he got on the track the car closed in on him and struck him. At that time the car had slowed down to about six miles an hour, or about half speed—we were running about twelve miles when we saw him. The horse was not thrown down, the wagon was overturned. . . . I should judge that when I first saw the wagon the car was about forty feet from the point where the accident occurred." Other details were related by Fletcher, but the above sufficiently sets forth the substance of his testimony. Stein, Molloy, and Fletcher were the only ones who testified regarding the circumstances of the accident.

This cause was transferred to the district court of appeal for the third district. The justices of that court could not agree and each wrote an opinion setting forth his views. After a careful consideration of the récord and of these opinions we agree with the conclusions of Mr. Justice Burnett on the questions of negligence involved. He says:—

"I cannot resist the conclusion that plaintiff was guilty of 'contributory negligence' as defined by the law. We are bound by the finding of the jury that 'The plaintiff while approaching the car track on Turk Street, by the exercise of ordinary care could have seen the approaching car.' But plaintiff testified that he did not see said car until he 'got on' the track. Therefore, I am convinced, he did not exercise ordinary care in approaching the crossing.

"However, notwithstanding his contributory negligence, I think there is sufficient evidence upon the theory of the 'last clear chance' to support the general verdict. The law upon this branch of the case, as I understand it, was correctly given by the court in the following language: 'I instruct you that one having knowledge of the dangerous situation of another, and having a clear opportunity by the exercise of proper care to avoid injuring him, must do so, notwithstanding the latter has placed himself in such situation of danger by his own negligence. If therefore, you should find from the evidence that the motorman of the defendant's car which collided with

the plaintiff saw the plaintiff before the collision, and had opportunity by the exercise of ordinary care, to avoid the collision, and failing to exercise such care or to do what reasonable prudence would dictate he should have done to avoid injuring the plaintiff, the defendant is liable and your verdict must be for the plaintiff.'

"Of the two elements therein' declared necessary to exist to enable plaintiff to recover notwithstanding his own negligence, knowledge by the motorman of the danger is disclosed by the testimony of Molloy and it is inferable also from the statement of Fletcher, the conductor, that 'as soon as the motorman saw the wagon he threw off the power and applied the brakes.' If the motorman endeavored to stop the car it was clearly for the purpose of avoiding a collision with plaintiff's wagon. This purpose necessarily implies on the part of the motorman an apprehension of danger to plaintiff. Besides, from the fact of the injury itself and the position of the said motorman, it would be fair to infer that he had knowledge before the accident occurred of the probability of the collision. The evidence then being sufficient to show that the motorman had reason to believe that the plaintiff was likely to be injured, the law imposed upon him the duty of exercising at least ordinary care to avoid the injury. It is clear that within the contemplation of ordinary care and prudence and in consonance with a just regard for the safety and welfare of others, the act required of him was to endeavor to stop his car before a collision occurred. At least, the case was such as to make it a proper question to be determined by the jury whether he acted promptly in his effort to stop the car when he was apprised of plaintiff's danger. If he made an honest effort to do so, no one, of course, could contend that he was at fault. But, on the other hand, if he failed to use the means at hand and made no effort to prevent the accident until he saw that it was impossible to avert it, the jury would be justified in finding for the plaintiff. To my mind this consideration appears to be the pivotal question in the case. Upon its solution depends, as I view it, the disposition of the cause. The evidence upon this point is conflicting. The verdict can be sustained if credit is given to Molloy's testimony as to the conduct of the motorman. But if the conductor is to be believed, the motorman did all that could be required of any man. To weigh this

testimony and to determine the question was, of course, the province of the jury. The trouble is, however, that we are left in doubt as to the conclusion of the jury upon this question of fact. The jurors were asked to find upon it but the court below—mistakenly, I think—held it to be immaterial. It seems to me as material as any question of fact in the case. It may be that the jury could not determine exactly 'how far the car was from the place of collision at the time the motorman turned off the power and applied the brakes.' But from the testimony it could be ascertained at least approximately and within reasonable limits, and under the law and decisions of the supreme court appellant clearly had the right, I think, to have the general verdict tested by this finding of fact. The result of the failure to find upon this material issue is the same as though there had been no agreement upon the general verdict, as pointed out in *Plyler* v. *Pacific etc. Cement Co.*, 152 Cal. 125, [92 Pac. 56], where the whole question of special findings by a jury is thoroughly discussed.

"In recapitulation: The case presents itself to my mind as follows: Plaintiff was clearly chargeable with contributory negligence. The verdict can be upheld, therefore, only upon the theory of recklessness or wantonness upon the part of defendant's servant, the motorman. This latter depends upon two elements, to wit, knowledge of the danger and the want of ordinary care. There is evidence of both but the latter depends entirely upon the question whether the motorman made every effort to stop his car as soon as he had knowledge of the danger. The jury was requested virtually to find as to this fact. They failed to do so and therefore the alternative is a new trial."

From the foregoing it appears that a reversal is necessary. The judgment and order are reversed.

Henshaw, J., and Lorigan, J., concurred.

ANGELLOTTI, J., concurring.—I concur: In view of the undisputed evidence, the plaintiff was driving his horse at a rate of speed faster than a walk over a street crossing, in violation of the terms of a city ordinance. As is clearly shown in the opinion, it must be held that he was guilty of negligence in so doing, in other words, that he did not use

ordinary care in approaching the car track on said crossing. The answer of the jury to the first interrogatory, "Did the plaintiff, in approaching the car track on Turk Street, use ordinary care to protect himself from injury," which was "yes," is therefore in conflict with the uncontradicted testimony. This answer may well be attributed to the failure of the court to give the two requested instructions first discussed in the opinion, which, as is there shown, correctly stated the law. If the negligence of plaintiff in this regard contributed proximately to his injury, as it might well have done in view of the evidence, he could not recover, unless defendant was liable under the "last clear chance" doctrine. It is impossible for us to say, upon the record before us, that the verdict of the jury was not based upon the theory that plaintiff was not guilty of contributory negligence, rather than upon the last clear chance doctrine. Indeed there is absolutely nothing in the findings of the jury to indicate that they based their verdict upon the last clear chance doctrine, and the evidence is such upon the question of the motorman's want of actual knowledge of plaintiff's dangerous position, an essential element of that doctrine, as to make it extremely doubtful whether a finding of liability on that ground could be held to be sufficiently sustained. I think, therefore, that it is very clear that the refusal to give the requested instructions was prejudicial.

Upon the other questions discussed in the opinion, I concur in the views expressed by Justice Melvin.

Shaw, J., and Sloss, J., concurred.