[Civ. No. 6310. First Appellate District, Division Two.—October 26, 1928.]

RICHARD SICHTERMAN, Respondent, v. R. M. HOL-LINGSHEAD CO. (a Corporation), Appellant.

Edwin H. Williams for Appellant.

Ford, Johnson & Bourquin for Respondent.

STURTEVANT, J.—Plaintiff commenced an action against the defendant to recover damages for injuries sustained in an automobile collision. The jury returned a verdict in favor of the plaintiff, and from a judgment entered thereon the defendant has appealed.

In his complaint the plaintiff charged negligence in general terms following the pleading of the plaintiff in *Stein* v. *United Railroads*, 159 Cal. 368 [113 Pac. 663]. In its answer the defendant denied any negligence on its part and pleaded contributory negligence on the part of the plaintiff. In its opening brief the defendant contended that it was not negligent and quoted from the record to sustain the contention. It also contended that the plaintiff was negligent and quoted from the record to sustain that contention. Furthermore, as stated above, it made the contention that prejudicial error was committed by the trial court in giving an instruction on the doctrine of the last clear chance. When the plaintiff filed his brief he quoted no part of the record refuting the contentions made by the defendant, but merely addressed himself briefly to citing some authorities on the question of imputed negligence and some on the subject of the doctrine of the last clear chance. He says: "The evidence was quite conflicting upon the question of the negligence of defendant and contributory negligence of plaintiff. Counsel for defendant admits that the evidence was conflicting upon these questions (App. Br., line 4)." The reference is incorrect. However, on page 4 and not line 4, we find the following: "The evidence in the case conflicted sharply as to the facts of the accident complained of, but it was uncontradicted in other matters of substantial importance." Whatever the writer meant by the language just quoted, it is perfectly clear to one who picks up the defendant's brief and examines its one hundred twenty-two pages and the appendix of fifty-one additional pages, that the defendant is not to be understood as admitting that the evidence is conflicting on the issue of the defendant's negligence, nor that it is conflicting on the issue of the plaintiff's negligence. On these all-important matters the plaintiff gives us no help. Considering the rights of the litigants we have been at great pains to study the record, which is very long and which is not printed in whole or in part by the plaintiff.

■ 1. It will greatly simplify this decision if we first discuss the question of imputed negligence. The facts pertinent to that issue are these: The plaintiff was riding on the right-hand side of the front seat of a Ford touring car. J. P. Knight was at the wheel and there is no claim that the plaintiff had physical hold or control of any part of the car. J. F. Mahoney was formerly the owner of a business conducted under the name of Mahoney Floor Polishing Company. The plaintiff was an employee. Later Mahoney extended the lines of his business. To do so the Peerless Safety Device Company was incorporated. He owned a part of the stock. W. H. Cherry owned a part and the plaintiff owned a part. There were no other stockholders. Mahoney acted as manager or superintendent. Sichterman took orders from Mahoney and continued as an employee. When there was work for more persons extra help was hired. The employees, whether stockholders or otherwise, were each paid by the hour. The company owned the Ford touring car. J. P. Knight was an employee. When the car was to be driven it was Knight's duty to drive it and when a certain job was reached he stepped from the wheel and worked with the rest of the employees. As Mr. Mahoney testified: "We all worked together. I got down on my hands and knees the same as the rest. We all worked together." As to the power to boss or superintend, there was evidence that Knight and Sichterman stood on an even plane; neither had authority to direct the other. There was no conflict in the evidence on the question of the relative authority of these two servants. Under these circumstances the trial court did not err in giving instructions to the effect that the driver's negligence was not to be imputed to the plaintiff. (*Bryant* v. *Pacific Electric Ry. Co.*, 174 Cal. 737, 742 [164 Pac. 385].) The court quotes with approval from *Nonn* v. *Chicago City Ry. Co.*, 232 Ill. 378 [122 Am. St. Rep. 114, 83 N. E. 924], where it is said: "There can be no such thing as imputable negligence, except in those cases where such a relation exists as that of master and servant or of principal and agent." As there was no such relation existing between this plaintiff and Knight, the negligence of the latter may not be imputed to the former. The trial court did not err in giving instructions to that effect.

2. The defendant calls to our attention the fact that Knight did not hold a chauffeur's license and that the plaintiff was riding with him and that the omission of Knight and of the Peerless Safety Device Company to procure such license constituted negligence which is to be imputed to the plaintiff, and that such negligence constituted contributory negligence on the part of the plaintiff. The authority cited on the first point discussed by us is against this contention of the defendant. So is *Irwin* v. *Golden State Auto Tour Corp.*, 178 Cal. 10, 14 [171 Pac. 1059]. These two cases are addressed to the negligence, if any, of Knight. As to the negligence of the Peerless Safety Device Company, the rule is the same. (29 Cyc. 545, 546.) The defendant cites and relies on the doctrine stated in 2 Thompson on Corporations, second edition, page 269, section 1268. It is not in point. This is not an action by the corporation or one of its stockholders against an officer of the corporation. The trial court did not err in the instructions which it gave or those which it refused on this issue.

3. Shorn of all features claimed to have arisen by reason of negligence imputed to the plaintiff, the court fully instructed the jury on the subject of contributory negligence. By its verdict the jury has made the implied finding that the plaintiff was not guilty of contributory negligence. We are not at liberty to disturb the verdict in view of the evidence which was introduced at the trial.

4. The defendant claims it was not negligent and it quotes the record to sustain its contention. As hereinabove set forth, the plaintiff has given us no help in his brief. At the trial the parties used a diagram on which the witnesses drew lines, etc., with colored crayons. That diagram has been brought up. From the record it appears that before either party had reached Fifth Street each vehicle was on its side of the street and if each vehicle had continued forward on straight lines there would have been a space of twenty-five feet between them. The witness Knight testified that as he turned on Townsend Street to go northwesterly on Fifth Street, the defendant's car was a short distance back of the northeasterly line of Fifth Street. He marked both points. He testified further that he then proceeded at about five to eight miles per hour. Measuring the distance between where his car was at that time and the point of the

impact, and making the same measurement between where the defendant's car was and the point of the impact, the distances are approximately the same. The witness Hancock, who was driving the Mack truck, testified that when he saw the Ford car start to pass in front of his truck, the truck was at the curb line or fifteen feet out into Fifth Street. "At that time I had a clear view of the Ford; an unobstructed view. The driver of the Ford gave me absolutely no signal—absolutely no signal of his intention to turn. He did not put his left hand out. I did not hear any horn at all. It was going at a very high rate of speed. I would estimate it to be about twenty-five miles an hour. When I saw the Ford commencing to make that turn I blew my whistle and swung to the right and put on my emergency brake and my foot brake and pulled over." The plaintiff in argument claimed that the defendant was negligent because it did not stop. The answer is that the evidence shows the driver tried to stop and the evidence does not show that he negligently did or omitted any act in that attempt. As we have shown by the testimony of the witness Knight, the truck was not going any faster than the Ford car was going, which was estimated by the same witness at five to eight miles. The witnesses for the defendant gave similar testimony regarding the speed of the truck. Moreover, they testified that the Ford car ran into the truck and that the occupants of the Ford car were thrown forward and out. Plaintiff produced a photograph of the Ford car which shows the right-hand fender to be bent and torn up until it is nearly as high as the top of the radiator. If, as contended by the plaintiff, the big Mack truck ran into the Ford from behind, striking it on the right-hand side, that fender would have been bent down and not up. If, as testified to by the witnesses for the defendant, the Ford ran into the Mack truck from behind, striking it on the left-hand side, the result might have been to press the fender upwards as shown in the photograph and to throw the occupants forward. The record contains little, if anything, that can be claimed to be in conflict with what we have quoted and which tends in the least to show negligence on the part of the defendant.

5. The court instructed the jury on the doctrine of the last clear chance. The defendant claims this was

error. The plaintiff asserts that the witness Hancock stated that when his truck was at the northeasterly line of Fifth Street it was traveling seventeen to eighteen miles an hour. Traveling at seventeen or eighteen miles an hour, the witness testified that he could stop the truck in twenty feet. At the northeasterly line of Fifth Street there was no occasion for stopping. After crossing the northeasterly line of Fifth Street the truck proceeded fifty feet or thereabouts. The plaintiff argues that these facts justified the instruction on the last clear chance. But several factors were wanting to support the argument. When the truck was at the northeasterly line of Fifth Street the evidence does not disclose any fact which showed to the driver of the truck that the Ford car was in a position of danger from which it could not extricate itself. Under the facts contained in the record the defendant had as much right to claim that the Ford car should have stopped. We think the trial court erred in giving an instruction on the doctrine of the last clear chance and that under the facts of this case the error was prejudicial.

The judgment is reversed.

Nourse, J., and Buck, P. J., *pro tem.*, concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on November 23, 1928, and the following opinion then rendered thereon:

THE COURT.—The petition for rehearing is denied. In his brief the plaintiff did not specify any act of defendant claimed to be negligence. In his petition for a rehearing plaintiff asserts that the defendant violated the provisions of subdivision 2 of section 113 of the Motor Vehicle Act (1 Deering's Gen. Laws 1923, p. 1886), and that defendant failed to use ordinary care. (*Rush* v. *Lagomarsino*, 196 Cal. 308 [237 Pac. 1066].) The statute relied on refers to places "when the driver's view is obstructed." In this case there is no evidence that the driver's view was obstructed. The statute relied on limits speed to fifteen miles "in traversing" an intersection. To traverse means "to pass across, pass over, cross in traveling." (Cent. Dict.) As defendant traversed the intersection the

record wholly fails to show that he did so at a speed of fifteen miles or more.

In his petition the plaintiff states that the driver of the truck "admits that when he entered the intersection of the two streets he was traveling at a speed in excess of that allowed by law; and he admits that he saw and realized then that a collision was inevitable if he did not stop; and admits that at the speed he was traveling he could have brought his truck to a stop in time to avoid the accident—very quickly—within twenty feet. . . . " The claim is stated strongly. The vice rests in this, that the record does not sustain the claim. The driver testified that when traveling seventeen to eighteen miles he could stop in twenty feet (Tr. 103); that he was so traveling when he was at the intersection (Tr. 150); that he there reduced his speed (Tr. 150); that when he saw the Ford swing into his path the witness blew his siren, put on both brakes, and swung to his right (Tr. 206–233); that when he so swung the witness was at the point marked H–14 (Tr. 232); that is a point fifteen feet inside of the intersection and about thirty feet from the point of impact; that when the witness swung to his right was when he discovered that a collision was imminent (Tr. 206); at that same instant, so the testimony of that witness runs, the truck was moving thirteen miles per hour or less (Tr. 234); or, as the testimony of the driver of the Ford runs, the truck was then traveling about ten or fifteen miles per hour (Tr. 21). The record discloses no act of negligence on the part of the defendant.

A petition by respondent to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 24, 1928.