[Civ. No. 10949. First Appellate District, Division Two.—January 3, 1940.]

HARRISON SMITH, Respondent, v. WESTERN PACIFIC RAILROAD COMPANY et al., Appellants.

Ernest I. Spiegl and C. W. Dooling for Appellants.

Richard I. McCarthy, Frank V. Campbell, Walter E. Rankin and Robert E. Hayes for Respondent.

STURTEVANT, J.—The plaintiff commenced an action against the defendants to recover damages for injuries sustained when he fell or was thrown from a freight car. After a trial before the trial court sitting with a jury, the latter returned a verdict in favor of the plaintiff. From that judgment the defendants have appealed.

At San Jose the defendants maintain a freight yard. It is in the form of a crescent. The portion of the freight yard involved in the case at bar extends in a general direction from north to south. On the western side a spur track has been inserted which serves certain industries, among others the General Box Distributors. That company has warehouses and a lumber yard on the western side and immedi-

ately adjacent to the spur track. The spur track has a compound curve. By reason of the curve the easterly rail at the point where the accident occurred is approximately three and a quarter inches higher than the westerly rail. Prior to July 2, 1937, there had been placed on the spur track adjacent to the warehouse of the box company three different cars. WP Car No. 17,045, hereinafter called the car, had been received with a load of lumber and was the most southerly car and stood opposite the lumber yard. Its load had consisted of boards 1⅜ inches thick, 10 inches wide, and varying in length from 12 to 16 feet. The boards were piled lengthwise in the car and the top of the load reached 7½ or 8 feet above the floor of the car. The plaintiff and an assistant, Tex Warren, had been engaged in unloading the car. To gain access to the car they placed a board resting on the ground on the western side and resting on a truss rod of the car. The plaintiff climbed from that up to and into the car. They nailed a board horizontally across the west door about five feet above the floor of the car, then for the purpose of unloading the boards they placed a metal roller in such a position that the west end extended over a barbed-wire fence into the lumber yard and the east end rested on the board so nailed to the door. The load consisted of practically two piles, one in the extreme north end of the car and the other immediately adjacent to the south. As so arranged that left a vacant space in the extreme south end of the car. The plaintiff and his associate had proceeded with the unloading to such an extent that most of the lumber in the southern pile had been removed down to within three feet of the floor of the car. However, one tier of boards still stood along the eastern wall from the floor to the ceiling. The plaintiff was working on the inside of the car, picking up the boards, placing them on the roller, rolling them out to Warren, and he in turn took them off of the roller and stacked them in the lumber yard of the box company. While they were so engaged in their work the agents of the defendants appeared with a switch engine. J. S. Henry, the switch foreman and yardmaster, appeared at the west door of the car and informed the plaintiff that the car was to be switched. Accompanying Henry was L. Stockdale, a switchman. A few feet south of the door and on the westerly side stood

T. Cottle, another switchman. I. V. Finley, the fireman, was acting as engineer. A. W. Ellis, the engineer, was seated on the side ordinarily occupied by the fireman. Having spoken to the plaintiff as above mentioned, Henry passed to the north near the next car and left Stockdale to give the signals. In reply to Henry's statement the plaintiff remarked, "If you are going to handle this car now you handle it carefully, this lumber is in a hell of a shape." That statement was heard by Stockdale. Henry was so near by that he should have heard it but he testified he did not hear it. Immediately before the car was moved as recited above the plaintiff stood on a pile of lumber three feet above the floor of the car. The door-sill, the width of the car and six inches wide, was clear. From the floor of the car to the rail was a distance of about four feet. The rail was approximately one foot higher than the ground. Some one of those who was on the ground removed the board or platform used to enter the car, the plaintiff pulled the roller into the car, and stood near the tier on the east side with his hand resting thereon. In a second or two Stockdale gave a signal and the switching commenced. The engine was coupled to that car, the latter was coupled to the next, and it in turn was coupled to the next, and the train as so made up moved south over the switch a distance of approximately 200 feet. At that point there is a maximum differential in elevation of the east rail over the west rail. The engine came to a stop. After about a minute and a half a signal was given and the train commenced to back. It had not moved but a short distance when the tier of lumber fell from the east toward the west and the plaintiff fell or was knocked out of the west door onto the ground. Other facts will be recited as it becomes necessary.

The defendants contend they were not negligent. They first claim that plaintiff, after he pulled in the roller, was a licensee and that they owed him no duty except not to act wilfully or wantonly. But both Henry and Stockdale knew, or from facts within their knowledge should have known, of the plaintiff's presence in the car. Therefore the defendants owed to him the duty to conduct their activities with reasonable care. (*Hamakawa* v. *Crescent Wharf etc. Co.*, 4 Cal. (2d) 499, 501 [50 Pac. (2d) 803].) As shown

above both Henry and Stockdale, the agents of the defendants on the ground, knew the conditions and circumstances existing in the car. Nevertheless Henry ordered it switched. Stockdale gave the signal. What signal he gave is controverted. But no accident happened. Later there were more signals to couple two more cars, a signal to back across the switch, and then one to go back onto the switch of the box company. Before the last movement was made the ordinary signal was given. That movement was fraught with danger to the load in the car because of the embankment at that point. In making the last movement the accident happened. The fireman was operating the engine and he testified that, except as to the first signal, every one was the ordinary signal to "go ahead". As to what signals ordinary train crews have or use was testified to by the agents of the defendants. That testimony is hopelessly conflicting. Ellis, the engineer, testified that when operating on a commercial track (an industrial spur) an ordinary signal means very easy; just about as easy as can be made; it would be impossible to go any other way. But his fireman, Finley, testified the first signal he received was "Go ahead, take it easy," and later he received nothing but ordinary signals. Those statements conflict. It was for the jury to ascertain which was most nearly correct.

The evidence also presented a question of fact as to whether under all of the circumstances then existing the train crew should have moved the car at all. The above-mentioned statement of Ellis at least tends to show he was aware it was the duty of those switching cars on commercial spurs and side tracks to use extra care. Manifestly, the first thing to note was the condition of the load, if any. It is statutory that defendants were bound to use at least ordinary care (Civ. Code, sec. 2114), but the question still remained what was ordinary care. Henry, the switch foreman, was on the ground, went to the car, told the plaintiff the car was to be moved, passed on to the next car, and was within a few feet of the door of the car when it was moved. He testified he did not know the plaintiff was in the car when it was moved. Did he close his eyes? As he passed he observed the condition of the load. He testified he saw no danger. Did he close his eyes to a patent danger? Or, if his judgment that

the car was in condition was correct, then does it not follow that the car was so carelessly handled a stable load was caused to topple over? Clearly all of these questions were for the jury.

The agents of the defendants testified it was impossible for them to switch the cars and use less force than they did. If so, they knew that fact before they acted. They knew the condition of the car and all of the circumstances. They were in control. If the car was not in a condition that it could be moved without injury to plaintiff or the contents of the car, the defendants had the right to refuse to act until the car was conditioned—the freight stabilized and all persons ejected if necessary. Whether they negligently failed to exercise that power was a question for the jury. If the car as it stood in defendants' switch yard, by the exercise of due care, could have been moved without injury, the question whether at the time of the accident the defendants exercised due care was also a question for the jury.

■ The defendants claim the plaintiff was, as a matter of law, guilty of contributory negligence, because (1) he did not get out of the car, (2) he did not support the lumber, and (3) he did not take a position of safety in the south end of the car which was vacant. No one of those specifications is convincing. In *Seller* v. *Market Street Ry. Co.*, 139 Cal. 268, at page 271 [72 Pac. 1006], the court said: "It has often been said by this court that it is very rare that a set of circumstances is presented which enables a court to say, as a matter of law, that negligence has been shown. As a general rule, it is a question of fact for the jury, an inference to be deduced from the circumstances of each particular case, and it is only where the deduction to be drawn is inevitably that of negligence that the court is authorized to withdraw the question from the jury. This is true even where there is no conflict in the evidence, if different conclusions upon the subject can be rationally drawn therefrom. If the conceded facts are such that reasonable minds might differ upon the question as to whether or not one was negligent, the question is one of fact for the jury. These rules are so well settled as to render it unnecessary to here do more than state them. Citing authorities." (*Stoutimore* v. *Atchison, T. & S. F. Ry. Co.*, 338 Mo. 463 [92 S. W. (2d) 658], involved the claims

of a consignor for damages for injuries sustained while he was engaged in loading his freight. There, as here, it was claimed he was guilty of contributory negligence as a matter of law. On page 665 the Supreme Court of Missouri said: "Neither can we sustain defendant's contention that plaintiff was guilty of contributory negligence as a matter of law. Plaintiff was not an experienced railroad man. He was working in the dark with the instrumentalities furnished to him by defendant. Under such circumstances, he could only be held guilty of contributory negligence as a matter of law if the danger of doing so is so obvious and glaring that no reasonably prudent person in the exercise of ordinary care would undertake to do so. (Citing authorities.)" Many other authorities involved injuries to the person engaged in loading and unloading cars. Without an exception the same conclusion was adopted and followed for the same reasons. (*Pinconning Tp.* v. *Detroit & M. Ry. Co.*, 238 Mich. 100 [213 N. W. 156]; *Chadderdon* v. *Michigan Cent. R. Co.*, 100 Mich. 293 [58 N. W. 998]; *Chesapeake & O. Ry. Co.* v. *Hudson*, 169 Ky. 580 [184 S. W. 884]; *Illinois C. R. R. Co.* v. *Anderson*, 81 Ill. App. 137.) It follows that the trial court did not err in submitting to the jury the question regarding the contributory negligence of the plaintiff.

The next contention made by the defendants is that the trial court erred in giving an instruction on the doctrine of the "last clear chance". They concede the instruction was properly worded. However, they contend it was inapplicable to the facts. In that connection they set forth five different elements as being comprised within the instruction. We think the evidence hereinabove set forth justified the court in giving the instruction on the assumption there was some evidence to sustain each element so set forth. (*Chesapeake & O. Ry. Co.* v. *Hudson*, 169 Ky. 580 [184 S. W. 884, 886, 887].)

Again it is contended that the court erred in giving certain instructions at the request of plaintiff upon the duty of the agents of the defendants to orally warn the engineer. It is asserted that one of the instructions assumed as a fact that the ground crew did not orally warn the engineer. We think the criticism of the instruction as assuming a fact is not well founded. However, if it did assume the fact there

was no error because the evidence was without conflict that no oral warning was communicated by the ground crew. ■

In this connection it is further contended the question of whether an oral warning was given or was not given was not presented by the pleadings. We think it was. The plaintiff in his amended complaint pleaded the negligence of the defendants generally. That pleading was sufficient. (*Stein* v. *United Railroads,* 159 Cal. 368 [113 Pac. 663].) Under that allegation, among other things, the plaintiff was entitled to produce evidence as to the signals given, whether they were signals made by swinging the arm or by oral statements.

■ The defendants copied the last sentence of the third paragraph in 13 California Law Review, page 72, and requested the trial court to give it as an instruction. As will be noted said sentence purports to define a trespasser, a licensee, and an invitee. The trial court struck out the first clause and gave the remainder as an instruction. In striking out the first clause the trial court doubtlessly aimed to omit all regarding a trespasser. However, it included the verb contained in the sentence. The portion as given consisted of words without making a complete sense. The defendants call these matters to our attention and claim the trial court erred. That there was a technical error will be conceded. However, the trial court gave another instruction which fully covered the subject. The defendants contend it did not because, as they claim, admitting plaintiff was an invitee while unloading the lumber, he became a licensee while the cars were being switched. Admitting, solely for the purposes of this opinion, such to be the fact, as we have shown above the defendants were bound to " . . . conduct its activities with reasonable care for his safety only after it knew or from facts within its knowledge should have known of the plaintiff's presence". (*Hamakawa* v. *Crescent Wharf etc. Co., supra.*) The record discloses that the instruction complained of, when read in connection with the other instructions that were given, was not prejudicial to the rights of the defendants.

The defendants further contend that the trial court erred in allowing the jury to speculate and guess in regard to certain issues of fact. They assert there was no evidence to show whether the lumber fell by reason of the acts of the

train crew or by force of gravity. It is sufficient to state there is not a particle of evidence that the tier of lumber on the east side of the car was, prior to the movements of the cars, so unstable as to fall merely by reason of the force of gravity. In this same connection the defendants also contend the jury must have found the plaintiff was unable to leave the freight car before it was moved. As shown hereinabove, there is nothing to show that the jury so found nor that it was in duty bound to find such fact before it might return a verdict in favor of the plaintiff.

The defendants make numerous additional points and contentions. We have carefully examined the entire cause, including the evidence, and are of the opinion that no error complained of has resulted in a miscarriage of justice.

The judgment is affirmed.

Nourse, P. J., and Spence, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on February 2, 1940, and an application by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 29, 1940. Edmonds, J., voted for a hearing.