[Sac. No. 1338.   In Bank.—May 13, 1907.]

## BANK OF LEMOORE, Appellant, v. JOHN J. FULGHAM, Respondent.

PLEADING — DEMURRER FOR AMBIGUITY — IMMATERIAL ERROR IN OVERRULING.—An error in overruling a demurrer upon the ground of ambiguity, uncertainty, or unintelligibility is not reason for reversal, if it appears that the demurring party was not misled by the defects in the pleading and that the cause was fairly tried upon its merits.

TAXATION—NOTICE OF TAX-SALE—COMPUTATION OF TIME.—The provision of section 3767 of the Political Code to the effect that a sale for delinquent taxes must not be less than twenty-one nor more than twenty-eight days from the time of the first publication of the notice of sale is sufficiently complied with by a sale which is noticed for and had on the eighteenth day of June, 1897, in pursuance of a notice which was first published on the preceding twenty-eighth day of May.  Under section 12 of the Political Code, in computing the time of notice the first day of publication is excluded, and a sale had on the twenty-first day thereafter accords with the requirements of the statute.

ID.—CERTIFICATE OF SALE—RECITAL OF PENALTIES, COSTS, AND CHARGES. —Under section 3776 of the Political Code a certificate of sale for

delinquent taxes is not invalidated for failure to separately set forth the amount of the penalties, costs, and charges. That section only requires the amount of the assessment to be stated in the certificate.

ID.—STATEMENT OF PENALTIES, COSTS, AND CHARGES.—A certificate of sale for delinquent taxes which recites that the tax levied on the property was $19.20 and that the "penalties, costs and charges which have since accrued thereon amount to the further sum of $—," and which further recites that the sale was made to the state "for the amount of said taxes of every kind charged against the property, and penalties, costs and charges, to wit: the sum of $20.66," sufficiently shows that the amount of such penalties, costs, and charges was the difference between such stated amounts, or the sum of $1.46.

ID.—DESCRIPTION OF PROPERTY—OMISSION OF BASE AND MERIDIAN OF SURVEY—JUDICIAL NOTICE.—A description of the property assessed contained in the certificate of sale and tax-deed, which describes it as being within the county of Tulare, and further designates it by section, township, and range, is sufficient, although it fails to state the particular base and  meridian of the survey. The courts take judicial notice of the system of surveys prevailing in the state, and that there was but one piece of land in that county which by any possibility could have answered such description.

ID.—CERTIFICATE OF SALE—ERROR AS TO PERIOD OF REDEMPTION—DEFECT CURED BY ACT OF 1903.—Where the sale by the state of the land sold to it for delinquent taxes did not take place until after the full five years allowed for redemption had elapsed, an error in the certificate of sale in fixing the date when the five years' period of redemption would expire, was cured by the Curative Act of 1903, p. 63.

ID.—DEED FROM STATE—CONVEYANCE OF APPURTENANCES.—A deed from the state of land sold to it for delinquent taxes which describes the property conveyed as it was assessed and described in the certificate of sale, with the added words, "with the appurtenances, etc.," is not invalidated by reason of the addition of such words.

ID.—DUE PROCESS OF LAW—FAILURE TO MARK PROPERTY AS SOLD ON SUBSEQUENT ASSESSMENTS—CONCLUSIVENESS OF DEED.—After land has been sold to the state for delinquent taxes, and a sale and deed thereof by the state has been subsequently made, the owner cannot be held to have been deprived of his property without due process of law, by reason of the failure of the public officers, while the property remained unredeemed, to comply with the provisions of section 3680 of the Political Code, requiring that upon each subsequent assessment the assessor must enter the fact that the property has been sold for taxes and the date of the sale, and that upon all bills and statements there must be written or stamped the words, "Sold for taxes," and the date of the sale. The legislature had the power in the first instance to have dispensed with such requirements, without infringing upon the rights of the taxpayer as to

notice, or to provide, as it has done by section 3787 of the Political Code, that the tax-deed shall be conclusive evidence of a compliance with such requirements.

ID.—TAX-COLLECTOR MAY EXECUTE DEED FROM STATE—CONSTITUTIONAL LAW.—The provisions of the present ˜evenue law, whereby the tax-collector makes, on behalf of the state as its agent, the deed to the purchaser of lands sold to the state for delinquent taxes, is not in violation of section 14 of article V of the constitution, which provides that ''All grants and commissions shall be in the name and by the authority of the people of the state of California, sealed with the great seal of the state, signed by the governor, and countersigned by the secretary of state.'' Lands so acquired by the state were never within the purview of such constitutional provision; and the legislature had full power to make the tax-collector or any other person its agent and attorney in fact for the passing of the legal title to such lands.

APPEAL from a judgment of the Superior Court of Tulare County and from an order refusing a new trial. W. B. Wallace, Judge.

The facts are stated in the opinion of the court.

Charles G. Lamberson, for Appellant.

The notice provided for by section 3680 of the Political Code is an essential notice, without which the plaintiff could not be deprived of its property without violating the provision of the federal constitution prohibiting the taking of property without due process of law. (*Marx* v. *Hauthorn,* 148 U. S. 173, 13 Sup. Ct. 508; *Turpin* v. *Lemon,* 187 U. S. 51, 23 Sup. Ct. 20.)

E. O. Larkins, for Respondent.

U. S. Webb, Attorney-General, and E. B. Power, Deputy Attorney-General, for the State of California, *Amici Curiæ.*

HENSHAW, J.—When this case was in Department it was decided without reference to the Curative Act found at page 63 of the statutes of 1903. This was so because the briefs made no mention of, and placed no reliance upon, the provisions of that act. In *Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352], this act and its effect are considered. It is held to be constitutional and to relieve tax certificates and deeds from the irregularities and informalities enumerated.

Consideration of the case at bar must, therefore, be had in the light of this Curative Act.

Plaintiff's appeal is from a judgment in favor of defendant and from an order denying its motion for a new trial. The action was tried for the purpose of quieting title to certain real property situated in Tulare County. Plaintiff claims title as the successor in interest of George H. Davis, who, it is conceded, was on the first Monday of March, 1896, the owner of the property. Defendant deraigns title under a sale to the state for delinquent taxes, and the subsequent deed to him from the tax-collector, dated October 1, 1903. Various objections are made by the appellant to the validity of the proceedings, which were held by the trial court to have vested title in the defendant. But preliminarily plaintiff interposed a demurrer to defendant's answer, and urges that the demurrer should have been sustained.

The demurrer was both general and special. The general demurrer was properly overruled. The answer denied plaintiff's allegation of ownership and thus raised a direct issue upon this matter. Defendant filed his supplemental answer, and there undertook to set forth in detail the nature of his title. While there may be some foundation for the criticism that the pleading in this regard is somewhat ambiguous or uncertain, there was no such ambiguity or uncertainty as to have prejudiced plaintiff in meeting the issues which the answer tendered. It is plain therefrom that defendant was relying upon the tax title and nothing else. Even an error in overruling a demurrer upon the ground of ambiguity, uncertainty or unintelligibility, is not reason for reversal, if it appears that the demurring party was not misled by the defects in the pleading and that the cause was fairly tried upon its merits. (*Alexander* v. *Central L. and N. Co.,* 104 Cal. 532, [38 Pac. 410]; *Jager* v. *California Bridge Co.,* 104 Cal. 542, [38 Pac. 413]; *Stephenson* v. *Deuel,* 125 Cal. 656, [58 Pac. 258].)

Coming thus to the specific objections urged against the sufficiency of the tax-deed, the published notice of sale declared that unless the taxes, with costs, etc., were paid, the property would be sold to the state on the eighteenth day of June, 1897, and the sale actually took place on that day. The first publication of this notice was made upon the twenty-

eighth day of May, 1897. Section 3767 of the Political Code provides that the sale must not be less than twenty-one nor more than twenty-eight days from the time of the first publication. It is insisted in this case that the sale was premature. But as the sale did not take place until the twenty-first day, excluding the day of publication, it must, under section 12 of the Political Code, and the decisions of this court upon the matter, be held to have taken place in accordance with the requirements of the statute. (*Hannah* v. *Green*, 143 Cal. 19, [76 Pac. 208]; *Misch* v. *Mayhew*, 51 Cal. 514; *Wilson* v. *His Creditors*, 55 Cal. 476; *Dean* v. *Grimes*, 72 Cal. 442, [14 Pac. 178].)

The certificate of sale which was offered in evidence recited that the amount of the tax levied on the property was $19.20 and that the "penalties, costs and charges which have since accrued thereon amount to the further sum of $———." It is urged that the amount for which the property was or should have been sold is thus not stated, but there were further recitals that the sale was made to the state, "for the amount of said taxes of every kind charged against said property, and penalties, costs and charges, to wit: the sum of $20.66." There was sufficient evidence in the certificate to show that the penalties, costs, and charges in view of the statutory provisions of the Political Code governing such charges, costs, and penalties were $1.46,—the difference between the amount of the tax as stated, and the amount of the tax with added penalties, costs, and charges for which the property was sold. The only amount which is required to be stated is "the amount . . . of the assessment" (Pol. Code, sec. 3776), and this was stated. It did not invalidate the certificate if it failed to separately set forth the amount of the penalties, costs, and charges.

The description of the property in the certificate and deed was as follows: "Situate, lying and being within the said county of Tulare, state of California, and described thus: S. ½ of N. ½ sec. 13 T. 19 S. R. 23 E." It is urged that this description was insufficient to identify the property for its failure to state the base and meridian. But as the property was described as in the county of Tulare, there was but one piece of land which, by any possibility, could have answered this description, and the failure to name the meridian was

unimportant in view of this fact. A court takes judicial notice of the system of surveys prevailing in the state. (*Harrington* v. *Goldsmith,* 136 Cal. 168, [68 Pac. 594].)

The error in the certificate in fixing the date when the five years' period of redemption would expire is cured by the Curative Act of 1903, above referred to. (*Baird* v. *Monroe,* 150 Cal. 560, [89 Pac. 352].) In fact, the sale by the state did not take place until after the full five years' period had elapsed.

The deed conveyed the real property "with appurtenances, etc." There was by this no more conveyed than was assessed or included in the certificate of sale. The fact that appurtenances were named in the deed would not convey more property nor less than if the word had been omitted. (*Pellissier* v. *Corker,* 103 Cal. 516, [37 Pac. 465] ; *Williams* v. *Harter,* 121 Cal. 47, [53 Pac. 105] ; *Sparkes* v. *Hess,* 15 Cal. 186.)

Section 3680 of the Political Code provides that whenever property has been sold for taxes, and remains unredeemed, upon each subsequent assessment the assessor must enter the fact that the property has been sold for taxes, and the date of the sale, and upon all bills or statements there must be written or stamped the words "Sold for taxes" and the date of sale. This memorandum was not made. The parties paying the subsequent taxes did not receive this notice that the property had been sold. It is urged that this was a notice which the law required to be given to the owner of the property, and that a failure to give this notice amounted to a deprivation by him of his property without due process of law, since the law had provided this means of notice. But section 3787 of the Political Code makes the deed from the state conclusive evidence upon this matter. Of course, it is true that the legislature has not the power to make such a certificate or deed conclusive as to any of the essentials of the listing, valuation, apportionment, or notice (Cooley on Taxation, pp. 355, 356; 1 Blackwell on Tax Titles, sec. 640), but it can make the certificate or deed conclusive as to matters or things which in the first instance the legislature might not have required to be done, and which are in their nature, therefore, non-essentials. The notice here under consideration differs entirely from the notice of proposed sale given by publication —a notice designed to afford the property-owner protection,

and enable him to pay his taxes before title shall pass from him. Such notice he is entitled to receive, and such notice in the case at bar he did receive. The requirement for the stamping upon the subsequent assessment or tax receipts of the words "Sold to the state," may have been designed to serve a twofold purpose—that of convenience to the fiscal officers, and of continued notification to the taxpayer that his property had been sold. But there is nothing in the law which makes the giving of such a notice essential—no rights of the taxpayer would be violated if such a provision for notice were not required at all, and therefore, as we have said, it is but a convenience and not a right which the legislature has provided for. It is quite within its power to do away with this provision, or, as here, to hold that the tax-deed shall be conclusive evidence that it was given. (*De Treville* v. *Smalls*, 98 U. S. 525; *Rollins* v. *Wright*, 93 Cal. 395, [29 Pac. 58]; *Klumpke* v. *Baker*, 131 Cal. 81, [63 Pac. 137, 676].)

Section 14 of article V of the constitution provides that "All grants and commissions shall be in the name and by the authority of the people of the state of California, sealed with the great seal of the state, signed by the governor, and countersigned by the secretary of state." It is contended that as the provisions of the constitution are mandatory and prohibitory, the scheme of the present revenue law, whereby the tax-collector makes, on behalf of the state and as its agent, the deed to the purchaser of such lands, is violative of this constitutional provision, and that, therefore, the deed is void. In answer to this it may be said that it is perfectly apparent from a reading of the constitutional provisions touching the public lands of the state, that lands, title to which might thus be acquired by the state for delinquent taxes, were never within its contemplation. Indeed, it is well settled that lands which originally have been part of the public domain, and have become subsequently private property, on reverting to the state or other sovereignty by escheat, forfeiture, or otherwise, are not within the purview of the general land laws relating to the disposal of public lands, but will require special authority for their disposition. (*Governeur* v. *Robertson*, 11 Wheat. 332; *Carothers* v. *McLaren*, 56 Miss. 371; *Baker* v. *Kelley*, 11 Minn. 480; *Magruder* v. *Esmay*, 35 Ohio St. 222; 2 Cooley on Taxation, p. 858.)

In consideration of the further fact that the state's power of taxation is a paramount power and a necessary incident of sovereignty, such lands may be disposed of in any way that is not, in and of itself, plainly violative of constitutional provisions.

For these reasons we conclude that the state had full power to make the tax-collector, or any other person, its agent and attorney in fact, for the passing of the legal title.

For the foregoing reasons the judgment and order appealed from are affirmed.

Shaw, J., Angellotti, J., Lorigan, J., McFarland, J., and Sloss, J., concurred.

Rehearing denied.

In response to the petition for a rehearing, Beatty, C. J., filed the following opinion on June 15, 1907:—

BEATTY, C. J.—I am not prepared to say that I dissent from the judgment in this case, but there is one point upon which I should greatly desire to hear further and fuller argument.

The law (Pol. Code, sec. 3680) provides that whenever land has been sold to the state for failure to pay the taxes, and remains unredeemed, there shall be entered upon each subsequent assessment-book immediately after the description of the property the fact that said property has been sold for taxes, with the date of the sale, and that upon all bills or statements of or for taxes subsequently accruing upon the same property up to the time of redemption or conveyance by the state there shall be legibly written, printed, or stamped the words "Sold for taxes," with the date of sale. The object of this law is plain; it is intended not only to give notice to the delinquent taxpayer, but to his grantees every year for five years, of the fact of the delinquency and sale, and the necessity of effecting a redemption. The utility and necessity of such a provision in order to prevent the grossest injustice to owners of real property is obvious. The payment of taxes is largely intrusted to agents. Agents for that purpose have often proved unfaithful or negligent, and the absent owner who has provided the money to pay the taxes, relying upon

this law for timely warning of any neglect on the part of his agent to make the payment, may, if this law is disregarded, find himself at the end of five years despoiled of his property by the misconduct of the state's agents, notwithstanding the state has all the time been receiving from him the taxes subsequently levied, while his title was being secretly undermined. Of course it can be seen that the legislature so far from intending such a consequence, has provided *ex industria* an effective means of preventing it, and such a provision should not be placed in the same category with those merely formal and unessential directions which have no semblance of benefit to the taxpayer.

The state in this instance has given assurance to the person who continues to pay taxes on property that has been sold on account of the delinquency of his grantor, or agent, or trustee, or ancestor, that it will not forfeit his rights without express and repeated warning. To say that after thus lulling him into a fancied security, the state can make a false recital in a tax-deed conclusive evidence of a notice that has never been given, is to disregard a principle of equity, which it seems to me ought to bind even a sovereign state.

I think that upon more mature consideration the court might have found a way to decide the cause according to its manifest equity.