[Civ. No. 513.   Third Appellate District.—November 28, 1908.]

ADOLF IRRGANG, Respondent, v. FRANK OTT, Appellant.

NEGLIGENCE—INJURY FROM FALL OF SCAFFOLD—PLEADING—UNCERTAINTY—RULING ON DEMURRER NOT PREJUDICIAL.—When the complaint in an action to recover damages for injuries caused to plaintiff from the alleged negligence of the defendant while assisting plaintiff in the erection of a scaffold for plaintiff's use as painter of a building, occasioning his fall therefrom, shows clearly that defendant is sued as an individual, and alleges circumstances of the injury with sufficient definiteness and certainty to show *prima facie* that defendant alone was responsible for the injury, the overruling of a demurrer thereto for ambiguity and uncertainty by reason of

an unnecessary and superfluous averment that defendant was a stock-holder and president of the corporation that had engaged plaintiff to paint its house, which does not charge the company with any responsibility, is nonprejudicial, and cannot constitute ground for reversal, if it is not shown that defendant was misled, and the action was fairly tried upon the merits upon issues joined by him.

ID.—SUFFICIENCY OF EVIDENCE TO SUPPORT VERDICT.—*Held,* upon a review of the evidence, that the question of the defendant's negligence was fairly before the jury, and the evidence was sufficient to support its verdict for the plaintiff on that question.

ID.—CONSISTENCY OF SPECIAL AND GENERAL VERDICT—UNPROVED ITEMS —MODIFICATION OF JUDGMENT.—*Held,* that the special verdict was consistent with the general verdict, but that certain small items of damages allowed by the jury were unsupported by the evidence, and the judgment should be modified accordingly.

ID.—REQUESTED ISSUES INVOLVED IN ISSUES SUBMITTED.—The court did not err in refusing to submit special issues which were either immaterial, or were involved in the issues submitted to the jury. Where the same issue or question of fact is involved in another special issue or question of fact, the court may refuse to submit a special issue which is but a repetition, in form or substance, of the one given.

ID.—RETAXATION OF COST BILL PRIOR TO JUDGMENT—REVIEW UPON APPEAL.—When a cost bill filed at the time of the verdict was retaxed before judgment, and the amount allowed was included in the judgment, the order retaxing the costs may be reviewed, upon appeal from the judgment, upon a bill of exceptions.

ID.—IMPROPER ITEMS OF COSTS—BOARD OF JURY DURING DELIBERATION—TRAVELING EXPENSES OF REPORTER.—There is no authority given in section 274 of the Code of Civil Procedure for an allowance as costs of the board of a jury during their deliberation upon their verdict, nor for the traveling expenses of a reporter obtained from another county, there being no regular court reporter in the county of the venue by appointment or otherwise.

APPEAL from a judgment of the Superior Court of Mendocino County.   J. Q. White, Judge.

The facts are stated in the opinion of the court.

T. J. Welden, and W. D. L. Held, for Appellant.

J. W. Preston, for Respondent.

CHIPMAN, P. J.—This is an appeal from a judgment on the verdict of a jury awarding damages to a plaintiff for in-

juries received by him through the negligence of defendant. Defendant appeals from the judgment on bill of exceptions.

1. It is first contended that the demurrer to the complaint for ambiguity and uncertainty should have been sustained. We think the complaint shows clearly enough that defendant was sued as an individual, although it is alleged, quite unnecessarily, that he was a stockholder and president of the company that had engaged plaintiff to paint its house. This averment was superfluous, and does not charge the company with any responsibility for the injury. The allegations as to the circumstances of the injury were sufficiently definite and certain to show *prima facie* that defendant alone was responsible for the injury. Besides, defendant answered and went to trial upon the issues, and nothing appears to indicate that he was misled in any way as to the issues he was to meet, and in fact did meet as best he could, and the cause was fairly tried upon its merits. (*Bank of Le Moore* v. *Fulgam*, 151 Cal. 234, [90 Pac. 936].)

2. It is urged that the evidence does not support the verdict. It appeared that plaintiff was engaged in painting a building belonging to the company of which defendant was president; that his work required the use of a swinging scaffold which was fastened to the roof of the building by hooks to which ropes were attached and fastened to the scaffold; it became necessary to move the scaffold to another part of the building, and to do this ropes and pulleys to support it were used while supporting hooks were being attached to the roof of the building; defendant had assisted plaintiff in removing the scaffold at other times, and on the occasion in question he did so; his station was on the ground in front of the building, where he was able without effort to hold the scaffold in place by ropes fastened to each end while plaintiff got onto the scaffold and adjusted the hooks, which when done made it no longer necessary for defendant to retain his hold of the ropes; plaintiff left defendant holding these ropes, went to the roof, got down upon one end of the scaffold, which was about four feet from the top of a three-story building, fastened a hook, and told defendant to let go the rope holding that end, which defendant did; plaintiff then "started to crawl along on the scaffold for the purpose of fastening the other end," as he testified, and when about midway of the scaffold he "noticed that Ott (defendant) was not on the outside of the building

holding the rope. Mr. Ott had moved and gone inside the building, and the rope he was holding led into the door of the building"; plaintiff "called to him to come out and attend to business, that this was no monkey business." The next instant the scaffold fell and plaintiff was precipitated to the ground, thus receiving the injuries complained of. Defendant testified that he stepped into the door of the building, with his back toward the outside, holding the rope over his shoulder, so as to draw the scaffold up against the building, as the wind was blowing "and the loose end of the scaffold would swing away from the building"; standing there he heard plaintiff call and thought he said to "let go"; he let go of the rope and the scaffold fell to the ground immediately. Witness Harris, who was assisting plaintiff in painting the building, testified that the scaffold was "right against the wall," and that "the first position assumed by Mr. Ott was a good position to hold the ropes and keep the scaffold where he wanted it. There was not on that occasion any necessity for moving his position either by going inside the building or to any other place." The question of defendant's negligence was fairly before the jury, and we think the evidence was sufficient to support the verdict.

3. The jury rendered the following verdict: "We the jury find for the plaintiff and fix the damages as follows: First, for personal injuries, $135.00. Second: For loss of time $300.00. Third: For expenses of sickness, including services of a physician, nurse hire and medicine: Physician, $75.00, board and nurse, $85.00, drugs, $5.00." At the request of defendant the following special issues were submitted to and answered by the jury:

1. "What amount will compensate the plaintiff for all the detriment proximately caused to him by his injuries?" The jury answered: $600.00."

2. "Were the plaintiff and the defendant both guilty of negligence herein?" The jury answered: "No."

3. "When the defendant turned loose the rope, as testified to herein, did he exercise that degree of care which an ordinary, prudent and careful person would exercise under like circumstances?" The jury answered: "No."

There were certain other special issues presented by defendant which the court, it is claimed, erroneously refused to submit to the jury and are here given:

"When the defendant turned loose the rope, as testified to herein, did he, acting as a prudent man, believe that the plaintiff had called to him to let go the rope?"

"If the answer to the above question is 'yes' do you find that when the defendant turned loose the rope, he did so, acting on the belief as a prudent man, that the plaintiff had directed him to do so?"

"Did the plaintiff and the defendant both use ordinary care in the transaction out of which arose the injuries to plaintiff?"

It is contended that it was error for the court to enter judgment on the verdict for $600, the erroneous elements therein being: First, the item of $85, because the court had allowed $300 "for loss of time," and plaintiff was not entitled to both, for he would thus "receive double damages if allowed the expense of living, in addition to the value of his time" (citing *Graeber* v. *Derwin*, 43 Cal. 495); second, $5 for drugs as to which there is no evidence.

It was held in the case cited that "if it had appeared that the expenses of living were increased by reason of the illness resulting from the injury, there would have been plausible ground for claiming the excess as an item of damage." In the present case it so appeared. Before the injury he was paying $5 per week for his living expense, but he was charged $10 per week, as the result of his injuries, "for board and nurse" for eight and one-half weeks, which amounted to $85. There was no evidence of the purchase of any drugs. Respondent concedes that the judgment is $42.50 too much for board and that the item of $5 for drugs is not supported. But he claims that the answers to the special issues were in conflict with the general verdict and that the special verdict must control. (Citing Code Civ. Proc., sec. 625, and Clementson on Special Verdicts, p. 153.) The code provision reads: "Where a special finding of facts is inconsistent with the general verdict the former controls the latter and the court must give judgment accordingly." The special issue which was submitted to the jury, marked 1, called for an answer as to all the detriment caused by defendant to plaintiff and the jury answered $600, which is exactly the sum of the items mentioned in the general verdict. In answering the special issue the jury, we think, intended to and did make their answer conform to their estimate of the amount of damages as

stated by items in their general verdict. The general verdict
gave the items constituting the damage, and the special ver-
dict purported to and did give the amount for *"all* the
detriment" or damages caused by defendant to plaintiff.
There is no conflict or inconsistency between the two verdicts
—one gives the items and the other the amount of those
items. It was said in *Froman* v. *Rous,* 83 Ind. 94, cited in
note, Clementson on Special Verdicts, *supra:* "We have no
doubt that a plaintiff may be awarded a larger sum than that
stated in the general verdict, if the answers show him entitled
to it. Where the facts specially found clearly show that the
jury have erred in computing the amount of recovery, there
is a conflict between the answers and the general verdict, and
the former must control." Respondent admits that there is
no support in the facts for $47.50 included in the judgment,
and we do not think his reason for retaining that amount is
sound. The judgment must be modified to that extent.

4. It is next contended that the court should have given
to the jury the rejected questions, for the reason that they
were based upon the theory of inevitable accident and were
not given in the form requested or otherwise. The first two
questions, which were refused, do not present the issue of
inevitable accident unless it be true that defendant's *belief*
that plaintiff had directed him to let go the rope was a com-
plete defense. The question hinges on defendant's belief
alone, which we do not think would excuse him unless in
exercising that belief he acted with that prudence which the
situation of the parties demanded. This question of prudence
was clearly presented by the question given to the jury
marked 3. It was there asked if when defendant "turned
loose the rope, as testified to herein, did he exercise that degree
of care which an ordinary, prudent and careful person would
exercise under like circumstances?" To which the jury an-
swered, "No." The jury having thus determined the vital
question, it was immaterial what defendant's belief was.

The third question which was refused called for an answer
whether or not both parties used ordinary care, while question
numbered 2, which was given, required an answer whether
or not both were guilty of negligence. Plaintiff's negligence
was not an issue in the case, and no evidence pointed to negli-
gence on his part. Furthermore, we think both questions
were in effect the same, and one being answered the other be-

came immaterial. Where the same issue or question of fact is involved in another special issue or question of fact, the court may refuse to submit a special issue which is but a repetition, in form or substance, of the one given. (*Plyler* v. *Pacific Portland Cement Co.*, 152 Cal. 125, [92 Pac. 56] ; Clementson on Special Verdicts, p. 53.)

5. Defendant moved the court to retax the cost bill filed on the same day of the verdict. The court did not enter judgment until some time after the verdict was rendered. Meanwhile the court made an order settling the cost bill as rendered and afterward included the amount in its judgment. There is no appeal from the order. We may, however, review its action on the appeal from the judgment. (*Empire Lumber Co.* v. *Bonanza Co.*, 67 Cal. 406, 410, [7 Pac. 810].) The jury sat one day and was paid their *per diem* by defendant. The item of $4.55 "was incurred for the board of the jury during the time the jury were deliberating upon their verdict, and after the case had been submitted to them and before a verdict was rendered." The item of $4.50 was a charge "for the traveling expenses of the reporter from Santa Rosa to Ukiah, there being no regular court reporter for the Superior Court of Mendocino County, by appointment or otherwise."

No authority is given by section 274 of the Code of Civil Procedure for payment of traveling expenses of reporter in civil cases.

We know of no authority for allowing as costs the board of a jury. Respondent says he is "inclined to the belief that the contention of the appellant is correct." We are similarly inclined.

The judgment should be modified by deducting therefrom the sum of $47.50 for excess of board and for drugs, and the further sum of $9.05 erroneously allowed for costs, and otherwise to stand affirmed, and it is so ordered.

Hart, J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on January 22, 1909.