[Civ. No. 3295.   Third Appellate District.—September 6, 1927.]

JOHN T. LATKY et al., Respondents, v. FRED WOLFE, Appellant.

Cooley & Gallagher for Appellant.

Butler, Van Dyke & Desmond, Hartley F. Peart and Gus L. Baraty for Respondents.

HART, J.—This is an action for damages in the total sum of $31,655.56 for personal injuries alleged to have been sustained by the plaintiff, Mary A. Latky, by and through the alleged negligence of the defendant, which includes the sum of $6,655.56 for damage alleged to have been suffered by her husband (coplaintiff) as the direct consequence of the physical injuries alleged to have been so inflicted upon her.

The cause was tried by a jury, and a verdict returned in favor of the plaintiffs in the aggregate sum of $9,000. Judgment was entered accordingly. A motion for a new trial was made by defendant and denied by the court.

The appeal is by defendant from said judgment "and from each and every other interlocutory order made by the court," and upon a bill of exceptions.

Exceptions to the ruling on the demurrer to the complaint, to rulings with respect to the admissibility of certain evidence, to certain instructions, given and refused, and the claim that the verdict does not derive sufficient support from the evidence, constitute the complaints urged against the result arrived at below.

The brief of the plaintiffs, save in a few particulars, contains an accurate statement of the facts brought out by the testimony presented by them to support the allegations of the complaint and also some of the facts testified to by defendant. Said statement, corrected, though, in the particulars in which the inaccuracies referred to appear, so that it will conform to the testimony so presented, will, in part, be adopted as the statement of the facts herein, as follows:

The plaintiffs are husband and wife, residing on their ranch, consisting of seventy acres of young almond trees, situated about five miles out of Winters. On the morning of April 24, 1923, Mrs. Latky drove their auto, accompanied by a neighbor, Mrs. Sellers, to Sacramento to do some shopping, purchasing, among other things, a supply of groceries at Hale Brothers, and about closing time she drove her auto, a single-seated Overland coupe, in the alley to the rear of Hale's store to have the articles purchased placed in the car. This alley is regularly used by vehicles and is suffi-

ciently wide to permit of the passage of two vehicles; it is immediately to the rear of Hale's store, and runs in a general easterly and westerly direction, connecting Eighth and Ninth Streets; it is paved with cobblestone; the alley has quite a steep grade downward from Ninth Street; from Ninth Street the alley runs downgrade for about thirty-five feet, at which point it continues onward on the level.

Mrs. Latky drove her auto down this grade in a westerly direction to the level portion of the alley and came to a stop about ten or fifteen feet beyond the bottom of this slope; her car was close to the building on her right side. Mrs. Latky stood at the rear left fender of her car, while an employee of Hale's (witness Thomas) placed the groceries in the rear of her auto. This task completed, Mrs. Latky was about to step into her car, when she was struck by defendant's auto, which had run down this incline from Ninth Street without a driver; she was thrown and knocked to the ground and pinned under defendant's auto, as a result of which she sustained severe and permanent injuries and her husband deprived of her help and companionship.

Defendant Fred Wolfe, an employee of Hale's—it was closing time at the store—had driven his touring car into this alley from Ninth Street; he saw the Latky car at the bottom of the incline with the delivery boys around it and also noticed the trucks of Hale Bros. on the opposite side of the alley to the Latky car. Wolfe stopped his car about halfway down the incline or near the top of the grade; he claims he put on the emergency brake; he did not put it in gear, nor turn the wheels toward the building on his immediate right; he then jumped from his car and left it and started to walk back to the top of the incline to get a package in the store. Just then, as he entered the store, he heard a cry, turned around and tried to jump on to his moving automobile to stop it, but could not do so. Defendant's auto came down this incline at a good speed. After the car had struck Mrs. Latky it was pushed back off her body and clothes by "quite a few" men without anyone first attempting to release or manipulate the brakes.

The evidence showed that, just prior to the accident, Mrs. Latky was of the age of forty-nine years and that, although in ill health and under treatment by a doctor for tubercular trouble for several months in the year 1919—from

April 30th to August 6th of that year—when she was discharged as cured by her physician, she was, from the last-mentioned date to the time of the accident, in good health, an active woman, and capable of and actually attending to her household duties, "doing all of the housework in a five-room modern bungalow, with porches, doing all the washing, cooking for herself and husband and extra men, when necessary." She planted and attended to a vegetable garden which supplies vegetables for the ranch; she watered and weeded it; she had a nice flower garden which she cared for; she had planted and started a young nursery; she had two hundred hens and had raised and attended to about three hundred young chickens. She drove the auto almost every day for errands to the surrounding cities.

As a result of the injuries sustained when she was struck by defendant's auto she was rendered unconscious and removed to the Emergency Hospital; she sustained a fracture of the left fibula and a severe cut on her forehead; "pain and suffering was severe; her head was paining as were her eyes and there was a large lump raised on her head. During all the time she remained in the Emergency Hospital the pain was excruciating. Prior to the accident her hair was black with streaks of gray. When Mrs. Latky was finally taken to her home her hair was white."

She remained in the Emergency Hospital until the night of the 24th of April. She was put on a stretcher and taken by ambulance to the Sisters' Hospital in Sacramento, where she was put under the care of Dr. Von Geldern, and she remained in this hospital for two months. Long splints were placed on her left side from under her arms down to the bottom of her feet and on both sides of the left leg. She suffered severe pain to the left leg and to her head and neck. When she left the Sisters' Hospital she was not able to walk; she was taken home in a wheel-chair placed in an ambulance. She remained home at Winters for about ten days and was in bed continuously. She was then taken to San Francisco by automobile, propped up in a bed. She was taken to a hotel in San Francisco, where she remained seven days, confined to her bed with the exception of several trips to the doctor's office, which were made by taxi and by the aid of two men. She was then taken to a sanatorium at Belmont, where she was under constant medical treatment

and remained there about five or six weeks. From there she went in an ambulance on August 10, 1923, to the University of California Hospital in San Francisco, where she remained for a further period of six or seven weeks under the care of several physicians and surgeons. A cast was applied to the left leg at the sanatorium at Belmont; it was removed at the University of California Hospital. During all of this time she suffered severe pain. While at the University of California Hospital it was necessary to put a cradle over her body and this cradle was used for about four months for the reason that she could not stand the weight of bedclothes. She remained in the University of California Hospital suffering great pain and under constant medical attention, until September, 1923, when she returned to her home. At home she was practically unable to attend to any of the ordinary duties of a housewife; she was constantly attended to by her husband.

When the action was commenced January 30, 1924, Mrs. Latky had not yet discarded crutches; at the time of the accident she weighed one hundred ninety-three pounds; at the time of the trial she weighed one hundred sixty pounds—she then weighed more at the time of trial than a few months prior thereto. At the time of the trial, one year after the accident, "Mrs. Latky was still suffering pain in her leg, back and arm; she had almost lost the hearing of her right ear, sleeps but little; her eyes are painful; she is unable to read. . . . She was in the hospital with the injuries set forth above for three months; for another four months she was confined to her home on crutches" and at the time of the trial "we find a woman unable to do any housework, with hearing and eyesight gone—unable to be of any help, or assistance to her husband—she is wrecked in body and spirits."

Certain other facts, particularly those to which the defendant testified, and to which reference has to some extent been made above, will be adverted to and considered when we come to the consideration of the point made by the defendant that the verdict or judgment is not supported by the evidence and that the verdict is excessive.

The complaint, in language appropriate to pleadings, sets forth the essential acts embraced within the foregoing statement.

The defendant filed a demurrer to the complaint for want of facts and also on the special grounds that it is ambiguous, unintelligible, and uncertain. The demurrer was disallowed, and the defendant answered by a specific denial of each and every material fact alleged in the complaint.

1. The salient averments of the complaint are:

" . . . That the defendant so negligently, carelessly, recklessly and *unlawfully* drove, operated, maintained, and controlled his said automobile so that by reason thereof said automobile struck and ran into and against plaintiff, Mary A. Latky, injuring the person of plaintiff, Mary A. Latky, and injuring and damaging plaintiffs to the extent hereinafter alleged.

"That by reason of the said negligence, carelessness, recklessness and unlawful driving and operating of said automobile by defendant, the plaintiff Mary A. Latky was struck by the said automobile, and was thrown and crushed to the ground and was severely injured in her person, as follows: She was injured, bruised, cut and contused about the body, arms, limbs, elbows, knees, neck, head, ears and eyes; she sustained a severe shock to her nervous system and body and a severe wrenching of her spine and back; that her right eye was injured; and that her left leg was fractured; that her hearing has been impaired; that she sustained internal injuries; that ever since the said 24th day of April, 1923, said plaintiff has been sick, sore and disabled and weak; that said plaintiff has sustained permanent injury to her left leg, her back, head, ears and eyes, and to her health in general; that plaintiff has lost many pounds in weight; that ever since said 24th day of April, 1923, said plaintiff has suffered intense and excruciating pain and suffering; she has been unable to sleep for any length of time; has been confined to hospitals for the greater part of the said time and has been continuously, except at odd intervals, in bed; that said plaintiff is able to get about only with the aid of crutches."

The specific criticism of the complaint is that it is uncertain, in that it cannot be determined therefrom in what manner the defendant "unlawfully drove" his automobile, or in what manner, if at all, he "negligently, carelessly, recklessly or unlawfully maintained his automobile," or what was the nature of the internal injuries plaintiff, Mary A.

Latky, sustained, or "how many pounds in weight" it is claimed she lost in consequence of her alleged injuries, or "for what length of time" it is claimed she was "confined to hospitals."

The objections to the complaint are untenable. ■ It is, in this state—and we may, from the good sense of the rule, assume also in other jurisdictions—a well-established rule of pleading in personal injury cases that negligence may be alleged in general language. "What was done being stated, it is sufficient to say it was negligently done, without stating the particular omission which rendered the act negligent. But it must appear from the facts averred that the negligence caused or contributed to the injury." (*Stein* v. *United Railroads*, 159 Cal. 368 [113 Pac. 663]; see, also, *Smith* v. *Buttner*, 90 Cal. 95 [27 Pac. 29]; *Wiley* v. *Cole*, 52 Cal. App. 617 [199 Pac. 550]; *Tretke* v. *Forrest*, 64 Cal. App. 364 [221 Pac. 681].) The complaint in *Stein* v. *United Railroads, supra,* was in language quite similar to that by which the negligence imputed to the defendant here is alleged. Moreover, it is further said in the Stein case, and the same is equally true in this, that "even if it were error (and it was not), to overrule the demurrer for uncertainty, it was without prejudice unless the demurring party was misled by the defects in the pleading and the case (by reason thereof) was not fairly tried on the merits. Here it appears that the issues were fully, fairly and understandingly tried. (*Bank of Lemoore* v. *Fulgham,* 151 Cal. 234 [90 Pac. 936]; *Irrgang* v. *Ott,* 9 Cal. App. 440 [99 Pac. 528]"; see, also, *Dennis* v. *Crocker-Huffman etc. Co.,* 6 Cal. App. 58, 61 [91 Pac. 425], and cases therein cited.)

■ Under the general averments as to the injuries suffered by plaintiff, Mary A. Latky, which are alleged to have been proximately caused by defendant's negligence, it was proper and competent for plaintiffs to prove any specific physical injury or any mental impairment which thus she might have sustained. "A plaintiff is not required to allege specifically each physical injury sustained or which may have resulted from the accident. It is sufficient if such injuries can be traced to the occurrence complained of and are such as might naturally result from the injury." (*Kuhns* v. *Marshall,* 44 Cal. App. 588 [186 Pac. 682]; *Samuels* v. *California St. Ry. Co.,* 124 Cal. 296 [56 Pac.

1115]; *Treadwell* v. *Whittier*, 80 Cal. 574 [13 Am. St. Rep. 175, 5 L. R. A. 498, 22 Pac. 266]; *Worden* v. *Central Fireproof Bldg. Co.*, 172 Cal. 94 [155 Pac. 839].)

The complaint that the use of the word "unlawfully" in describing the general character or nature of the negligence charged in the complaint against the defendant necessarily implies that such negligence was in the violation by the defendant of some particular statute or local ordinance and that, therefore, the complaint is obnoxious to the objection of uncertainty in that it does not by reference or otherwise plead such statute or such ordinance cannot be sustained. Indeed, a complete answer to the proposition is to be found in the case of *Wiley* v. *Cole*, 52 Cal. App. 617, 618 [199 Pac. 550]. It is obvious that the word "unlawfully" was used in the complaint for the purpose of characterizing in a general way the conduct of the defendant constituting the negligence which plaintiffs say was the proximate or efficient cause of the injuries which were inflicted upon the plaintiff, Mary A. Latky. Manifestly, if defendant was guilty of negligence as alleged in the complaint, and with the result as so alleged, such negligence was wrongful and unlawful. Every infringement of a right and every tort or other actionable wrong are, in the very nature of the case, unlawful. But the employment of the word "unlawfully" in the connection in which it is used in the complaint was unnecessary and is surplusage. The use of the word as descriptive of the negligence alleged neither added to nor operated to detract from the sufficiency of the complaint in the statement of a cause of action for negligence. (*Wiley* v. *Cole, supra.*)

Further consideration of the complaint is not required. The pleading is impregnable as against all the objections urged by the demurrer.

2. There are here urged too many exceptions to the rulings of the trial court on the question of the admissibility of certain testimony to justify an attempt to give each special attention herein. In fact, such a review herein of those assignments is deemed to be unnecessary, since a careful examination of each of said assignments has made it clear to our minds that none of them, even if it were true that any is well founded (and we do not so hold) is of such gravity, or so prejudicial as to warrant a reversal of the judgment.

We will, however, refer to some of them in a general way by stating what it was competent for the plaintiffs to prove, under the averments of their complaint, either by their own testimony or that of other witnesses.

We have already declared that the plaintiffs were entitled to show, in response to the issues made by the complaint and the answer thereto, any particular physical injury directly resulting to the injured plaintiff from the accident. It was competent for Mrs. Latky herself to give testimony as to her physical condition prior to and following the accident as indicative of the effect the injuries she received in the accident had upon her body or her mind. For instance, it was proper for her to testify, as she did, that a large lump was produced upon her head; that her left leg was so injured as to necessitate the placing of her leg in a splint; that her hair, before the accident "iron gray" in color, shortly after the accident turned entirely white; that she was examined and treated by her physicians for "internal disturbances"; that she suffered pain in her left side; that, after the accident and resultant injuries, she experienced severe pains in her stomach; that she was troubled with nausea, and became so nervous that "moving and turning in bed" caused her to vomit; that her urinary organs (kidneys and bladder) were so affected by her injuries that she was compelled, after receiving them, to empty her bladder at inordinately frequent intervals. The following cases approve the action of the trial courts as proper in allowing a party complaining of injury sustained through the negligence of another to give the same character of testimony as the foregoing by the injured party in this case: *Freiburg* v. *Israel*, 45 Cal. App. 138 [187 Pac. 130]; *Ehat* v. *Scheidt*, 17 Cal. App. 430 [120 Pac. 49]; *Samuels* v. *California St. Ry. Co.*, *supra*; *Kuhns* v. *Marshall*, *supra*. As to all these matters, it may be stated, the physicians professionally attending and treating Mrs. Latky for her injuries described with technical nicety the nature thereof and their effect upon her generally, and that her description of her wounds and their effect upon her physical organization was, as far as she went, substantially the same as that given by the medical men.

The witness, Mrs. Maybelle Sellers, a friend of Mrs. Latky, and who accompanied the latter to Sacramento on

the day of the accident, and who was present when it occurred, testified that she held a conversation with the defendant immediately after the accident happened. She was asked by one of the counsel for plaintiff: "Now, what was that conversation? A. I said: 'How could that terrible accident have happened?' He (defendant) said: 'I cannot understand, unless my brakes were out of order.'" At this juncture, or after a few more immaterial words of the conversation were given by the witness, counsel for the defendant moved to strike out that part of the testimony of the witness stating that defendant said that he did not understand how the accident happened "unless my brakes were out of order." The motion was denied and it is here claimed that thus the court erred. The statement of the defendant with reference to the brakes on his automobile did not, as is obvious, involve a direct admission that they were defective or out of order, yet the statement was more or less pregnant with an admission that he (defendant) had not taken the precautionary measures to prevent his car, if unattended by anyone, from moving down the grade or decline by gravity which the peculiar circumstances of the situation, of his own creation, would naturally seem to have suggested and required. The testimony was relevant and material, and, therefore, admissible for what it was worth and its weight for the jury's determination. Of course, it will not be doubted that any declarations made by a defendant in cases of the class to which this belongs tending to show an admission by him that he was guilty of the negligence charged against him are admissible in evidence. (See on this proposition, *Scott* v. *Sciaconi*, 66 Cal. App. 577 [226 Pac. 827].) ▮ Nor will it be doubted that in cases where, as here, the injuries complained of are charged in the complaint to have been caused by the negligence of a driver of an automobile in operating or otherwise handling his car, it is competent and proper under general allegations of negligence, or, in other words, where, as here, there is no specific charge that the brakes were defective, to prove that the brakes of the car were, at the time of the mishap, in a defective condition. (*Carnahan* v. *Motor Transit Co.*, 65 Cal. App. 402 [224 Pac. 153]; *Wirthman* v. *Isenstein*, 182 Cal. 108 [187 Pac. 12].)

Mrs. Latky, as seen, was, a few years prior to the accident, afflicted with tuberculosis, and was for many months for that disease under the care and treatment of Dr. H. C. Warren, a specialist in lung diseases at the Belmont Sanatorium, in this state. The doctor's treatment effected a cure of Mrs. Latky and she was discharged by the doctor as cured in the latter part of the year 1919. Within a few months after the accident, she returned to Dr. Warren, and, upon examination, it was found that there was evidence of a recurrence of her lung trouble. When on the witness-stand in this case, Dr. Warren, testifying on behalf of plaintiffs, was asked by counsel for plaintiffs whether, in his opinion, the injuries received by Mrs. Latky in the automobile accident in question was a contributing factor to the return of her tubercular affliction. The question was objected to and the objection overruled. The answer in effect was that, in the absence of any evidence of a recurrence of the lung trouble from any other cause, it might be expected that the revival of the tubercular condition was superinduced by the injuries she had received. The question was proper and the answer responsive. Such questions to a medical doctor call for the testimony of an expert upon a subject as to which expert testimony is admissible. (*Dow* v. *City of Oroville,* 22 Cal. App. 215 [134 Pac. 197].)

The husband and coplaintiff of Mrs. Latky was questioned with regard to the physical condition of the latter subsequent to her return to her home from the sanatorium at which she had been under treatment for several weeks after the accident, and, over objections by counsel for defendant, was allowed to describe her condition as he observed it. The ground of the objections was that the questions called ''for the opinion and conclusion'' of the witness. The witness was competent to describe the condition of Mrs. Latky as he observed it. A lay witness is competent to give testimony upon such subjects where ''the injury is such as that its nature, extent and effect would be obvious to the common mind.'' (*Carr* v. *Stern,* 17 Cal. App. 397, 406 [120 Pac. 35, 39]; Code Civ. Proc., sec. 1845.)

With the exception of certain rulings relating to the evidence introduced by plaintiffs to prove the expenses incurred by plaintiffs for medical treatment administered to Mrs. Latky for her injuries by several doctors, and which rulings

will presently be considered, the foregoing embraces a review of the more important assignments involving attacks upon the rulings of the court on matters of evidence.

■ With reference to some of the rulings already considered and disposed of, as well as to some of those not specially considered herein, it is proper to say that to the questions involved. therein the objection was also made that they were leading or suggestive of the answers desired. This complaint has some foundation for its support. Of course, such manner of examining a witness on direct examination by the party producing him is improper, sometimes allowable, however, in the discretion of the court, where the situation is such, as sometimes it does arise, as to make questions so framed necessary. But questions in such form are, comparatively speaking, rarely propounded by one to his own witness on direct, and, when considered by the light of the record in its entirety, are generally not justly regarded as so serious in their effect upon the rights of the opposing party as to justify, for that reason alone, a reversal. It is perfectly clear that such objectionable form of the propounding questions to one's own witnesses, as was followed in the instances referred to here, could not, as an examination of the record will readily and convincingly show, as thus we have been satisfied, have affected, to his disadvantage or prejudice, any of the substantial rights of the defendant.

■ 3. The plaintiffs offered, and the court permitted to be received, as in proof of the special damage sustained by them as a result of the physical injuries suffered by Mrs. Latky, and which special damage was specially pleaded in the complaint, certain bills rendered to plaintiffs by the several doctors for medical services performed by them for her in the treatment of her injuries. The aggregate amount of those bills was $341, and the court, on this subject, instructed the jury that "there has been no testimony that plaintiffs have incurred any liability for alleged physician and surgeon services in excess of" that sum, and further instructed: "In case you do find in favor of plaintiffs as to such alleged services, your verdict cannot exceed said amount." The jury, in their verdict, did not segregate the damages into the several amounts which were to be assigned, respectively, to the several different items or elements of damage alleged and proved, but returned a ver-

dict in gross or for the total amount. It is, therefore, to be presumed, since the special damage following from expenses incurred for medical services was by the testimony definitely fixed or stated, as measured in money, and in view of the instruction on that subject, that the jury allowed plaintiffs and included in their verdict the total amount of the expenses for medical services as stated in the instructions. The proper measure of damages in such a case is the reasonable value of the medical services rendered, but, as to some of the bills here, no evidence of such value of the services forming the basis thereof was offered or received. It was not even shown that the particular bills in question had been paid, a circumstance which, it has been held, is some evidence of their reasonable value, and sufficient, in the absence of any showing to the contrary, to support a finding to that effect. (*Dewhirst* v. *Leopold,* 194 Cal. 424, 433 [229 Pac. 30] ; *Townsend* v. *Keith,* 34 Cal. App. 564, 565 [168 Pac. 402] ; 10 Cal. Jur., sec. 125, pp. 842, 843, and cases cited.) The bills or claims which were not shown to have been paid, and as to which no other testimony was offered or received to the effect that they represented the reasonable value of the medical services rendered, are the following: Dr. Dane, $5; Drs. Ruggles and Bryan, $30; Drs. Markel and Baldwin, $75; Dr. Lennon, $50; the total amount of the claims or bills being $160, in which amount the judgment must be reduced.

4. The action of the court in giving and refusing to give and modifying certain instructions is criticised by defendant. None of the points so urged merits special attention herein. The charge of the court to the jury embraced a singularly clear, and a full and correct statement of the law of the case as it was made by the pleadings and the proofs. Every principle of law pertinent to the facts was correctly submitted to the jury by the court. The given instructions to which the defendant here objects have been approved by the supreme court in many personal injury cases, the general facts of which are similar to those here. The modification of certain instructions proposed by the defendant and given as so modified did not have the effect of so changing such instructions as to render them ineffective in stating clearly the principles or rules of law therein sought to be stated.

5. The claim that the verdict is without sufficient evidentiary support and that the amount of damages awarded by the jury is excessive is untenable. The circumstances under which the accident happened, as detailed by the witnesses, principally those of the plaintiffs' and as hereinabove presented, being, as we must assume, credited by the jury, are such as to have justified them in finding that it was defendant's negligence which directly or proximately caused Mrs. Latky's injuries. But the defendant's own testimony is almost conclusive of the fact that he was negligent in parking his car as decribed and that such negligence was the efficient cause of the accident and its consequences as alleged in the complaint. He testified that at the time of the accident he stopped his automobile on the incline and ''put on the emergency brakes''; that he then left the automobile and ''went into . . . the entrance of the store'' to get a parcel; that as he ''was going inside of the store and was clear inside the entrance,'' he ''heard somebody holler''; that he thereupon ''turned around and jumped over to my car, tried to jump to it; it was too late''; that he had to release the brakes in order to push the car back; that after the accident the ''automobile stood on the incline all the time when I set the brakes the last time and did not roll away.'' On cross-examination he stated that his car was a second-hand automobile when he bought it, it being a 1919 model; that it then had been driven about 20,000 miles. He further stated that after the car was ''rolled back'' from the point where it struck Mrs. Latky he had to get into it in order to hold it. '' . . . My car,'' he proceeded to say, ''stood on the incline all the time when I set the brakes the last time and did not roll away. . . . I did not turn the front wheels in toward the north wall of the alley. I just put on the emergency brakes and jumped out of the car and left it.''

There is no reasonable ground for doubt that the defendant's act in parking his car on the incline of the grade and leaving it there parked and unattended, without taking extra precautions which those circumstances would seem to require, to prevent the car from leaving its position and going down the grade, constituted gross negligence.

In such a situation, a car left stationed on the brow of an incline, unattended by anyone, might be expected to leave its position at any time and proceed down the incline,

from the concussion necessarily and constantly produced by the heavy auto traffic or the movements with the usual speed of the bulky trucks and other automotive vehicles along the street with which the alley is connected unless the brakes were perfectly intact and thoroughly set. Knowledge of these facts is imputable to those who are accustomed to driving and otherwise handling automobiles. But it is not necessary to proceed further with a discussion of the evidence to show that the verdict, in so far as it is thereby found that the defendant was guilty of negligence in leaving his car in the position in which he left it under the circumstances as disclosed, is amply supported, except to suggest: ▆▆▆ That the statement, to which the defendant himself testified, that after the accident and after moving his car back to the position on the incline from which he left it in the first instance, he "put the brakes on," and the car "stood on the incline all the time" and "did not roll away," is justly susceptible to the interpretation that the reason that the car did not remain in the position on the incline in which he left it to go into the store was because the brakes had not been properly set. In other words, the jury could justly, and probably did, draw the conclusion from that statement of the defendant that the brakes were in good order, and that if defendant, as it was, in view of the peculiar situation, emphatically his duty to have done, had taken the pains to see that they were properly set when he left the car to go into the Hale store, the accident would not have happened.

▆▆▆ 6. It cannot with justice be held, as a matter of law, that the damages allowed by the jury are in excess of a reasonable and fair award of compensatory relief when compared with the nature of Mrs. Latky's injuries. In other words, we cannot say, as a matter of law, that the amount of damages awarded plaintiffs by the verdict is so disproportionate to the injuries shown to have been suffered by Mrs. Latky as to justify an appeal court in reversing the judgment. (*Meek* v. *Pacific R. R. Co.*, 175 Cal. 55 [164 Pac. 1117]; *Reeve* v. *Colusa Gas & Electric Co.*, 152 Cal. 99 [92 Pac. 89]; *Morgan* v. *Southern Pac. Co.*, 95 Cal. 99 [30 Pac. 601].)

As to the matter of the admeasurement of damages in actions of this character, what is said as follows in *Eldridge* v. *Clark & Henery Construction Co.*, 75 Cal. App. 516 [243

Pac. 43], is cogently pertinent to this, as generally to all personal injury cases:

"Of course it is to be conceded that the matter of assessing damages in a personal injury case is generally attended with more or less difficulty. The element of pain and suffering, which is proper to be taken into account with other elements in determining in such cases what would be a just admeasurement of compensatory relief, affords no definite or certain criterion by which the amount to be assigned to that item may be ascertained, and the same is often true, in a less degree perhaps, of other elements of the several which it is competent to consider in making the general award. Hence, in the last analysis, in the general run of cases, the determination by the jury of the amount which *will fairly compensate* for the loss sustained by reason of the defendant's tortious breach of a duty which he owes to others must be accepted as an honest, fair, intelligent and just adjustment of the matter."

Again in *Rystinki* v. *Central Cal. T. Co.*, 175 Cal. 336, 345 [165 Pac. 952, 956], it is said: "This court has frequently approved the statement in *Aldrich* v. *Palmer*, 24 Cal. 513, 516: 'In actions for personal torts the law does not attempt to fix any precise rules for the admeasurement of damages, but, from the necessity of the case, leaves their assessment to the good sense and unbiased judgment of the jury.'"

It follows from the principles thus declared, that on the question of excessive damages the appellate court will not interfere unless it can justly be held, from the face of the record or as a matter of law, that the damages awarded are "flagrantly outrageous and extravagant," and this, as we have declared, cannot be said as to the instant case.

The court below, as before stated, instructed the jury upon every material evidentiary phase of the case, and thus in clear language advised them as to their duty in deliberating upon and considering the evidence and arriving at a final determination. Correctly it thus told the jury that, if in their judgment, the evidence satisfactorily showed that the defendant's negligence was the proximate cause of the injuries suffered by Mrs. Latky, it would be their duty to award plaintiff compensation by way of damages which would be fair and reasonable when measured by the nature

and extent of such injuries; and likewise told the jury that the special damage alleged, if proved, should be allowed to the plaintiffs jointly—that is (and the instruction was explicit as to this), that the jury could not allow each plaintiff, independently of the other, damages on the plea of special damages, etc. Under these and the other instructions constituting the general charge to the jury upon the law and the evidence disclosing the character of the injuries suffered by plaintiff Mary A. Latky, and having found that such injuries were the direct consequence of defendant's negligence, it appears that the jury, in awarding plaintiffs $9,000 on account of all the several elements of damage pleaded generally and specially, showed that they had given a singularly conservative consideration to the case as made by the evidence, so far as compensation was concerned. A brief recapitulation of the facts regarding the injuries and the physical condition in which they left Mrs. Latky may, without impropriety, here be given. For several years prior to the date of the accident she was in excellent health, capable of and at all times actually performing the onerous and exacting duties incumbent upon a housewife. For about a year from the time of the accident, according to her own testimony and corroborated by the description of her injuries by the doctors, she suffered intense bodily pains, and at the time of the trial, which was exactly one year from the date of the accident, it was still necessary for Mrs. Latky to use crutches to enable her to walk. Her general nervous system was seriously impaired and her digestive and urinary organs so disarranged as to prevent the normal or usual functioning thereof. Because of all the physical disabilities caused by the injuries she received she was unable, at least up to the date of the trial of this action, to attend to her usual household duties in the usual way, her husband and co-plaintiff being compelled to assist her therein. She was, at the time of the accident, a woman in middle life, and added to her physical pains, which must have been, and were according to her testimony, intense and excruciating, was the mental anguish and suffering that is the natural concomitant of severe physical hurts and wounds, the effects of which are of long duration.

A general *résumé* of our conclusions herein may thus be stated: That the complaint in all respects sufficiently

and clearly and unambiguously states a cause of action for the relief herein sought; that no prejudicial errors were committed in the matter of the admission or exclusion of evidence; that the charge of the court to the jury upon the law of the case correctly and sufficiently covered all the vital questions of fact submitted to the determination of the jury; that in this connection, speaking more specifically, the court in no part of its charge assumed, as defendant contends, the establishment of the fact of the negligence of the defendant and that such negligence was the proximate cause of Mrs. Latky's injuries; that the verdict is amply supported and the amount of damages awarded to plaintiffs is not excessive, or, at any rate, cannot be held so to be as a matter of law, and that, therefore, the verdict and the judgment thereupon entered, in so far as they are to be regarded as involving implied findings of the essential facts, are binding or conclusive upon this court.

The judgment, as above stated, must be modified for the reason heretofore explained, by striking therefrom the sum of $160, representing the aggregate amounts due several of the medical doctors for professional services rendered Mrs. Latky in the treatment of her injuries, thereby reducing the amount of the judgment to the sum of $8,840, and it is hereby so ordered. As so modified, the judgment is affirmed, as are also the several "interlocutory" orders from which, in omnibus form, appeals are taken by defendant. If the appeal from the orders in the form stated was intended to include the order denying defendant's motion for a new trial, then, as such order is not appealable, the same is dismissed.

Plummer, J., and Finch, P. J., concurred.